Burke, J.
In this article 78 proceeding brought to compel the respondent Comptroller of the City of New York to comply with a grievance settlement between the respondent Board of Higher Education of the City of New York and the petitioner United Federation of College Teachers, Local 1460, AFL-CIO [UFCT], the question presented is whether the payment of public moneys pursuant to a grievance settlement awarding back salary for a period when concededly no services were rendered would constitute a gift of public funds in violation of article VIII (§1) of the New York State Constitution.[1] Answering this question affirma *129 lively, Special Term dismissed the petition and the Appellate Division affirmed, two Justices dissenting. In our opinion, the courts below erred in so holding.
Petitioner Antonopoulou was employed for several years by Queens College as a full-time lecturer, the terms of her employment being governed by a collective bargaining agreement between the UFTC and the respondent Board of Higher Education of the City of New York.[2] During the fall semester, 1969, when it came to the attention of the college authorities that the petitioner was pregnant, she was placed on maternity leave status- effective September 1,1969 through June 30,1970 (pursuant to art. XVI, § 16.4, of the By-laws of the Board of Higher Education). Following the birth of her child in November, 1969, the petitioner sought an early termination of her maternity leave, formally requesting permission to resume her employment at the commencement of the spring semester in February of 1970. That request was denied. Immediately thereafter the petitioner, through her collective bargaining representative, the UFCT, filed a grievance in accordance with the procedures of the collective bargaining agreement,[3] charging (1) that maternity leave is discriminatory as to sex; (2) that the president of the college is required to terminate a maternity leave once it can be established that there exists “an exceptional case”; and (3) that there are varying practices with respect to the enforcement of maternity leave provisions.
Step One of the three-step grievance procedure having failed, the UFCT, on April 27, 1970, filed a Step Two Grievance with *130 Chancellor Albert H. Bowker. This resulted in a decision by Bernard Mintz, Vice Chancellor and designee of the Chancellor, dated May 12,1970, retroactively reinstating the petitioner as of February 1,1970 and awarding her the appropriate salary from that date.[4] Thereafter, however, the respondent Comptroller of the City of New York refused to comply with the decision insofar as it awarded back pay, concluding that since no services had been performed by the petitioner during the spring semester, 1970, a payment of salary therefor would constitute a gift of public funds in violation of the State Constitution. Petitioner's then commenced this article 78 proceeding seeking a judgment annulling and setting aside the Comptroller’s determination as being arbitrary, capricious and an abuse of discretion, and directing compliance with the Vice Chancellor’s decision.
In dismissing the petition, Special Term upheld the Comptroller’s determination that payment would constitute a proscribed gift. ‘ ‘ In essence ’ ’, the court reasoned, ‘1 her right to compensation depends upon work performed and she cannot recover against the Board of Higher Education except for services actually rendered. It would, according to the general rule as applied in favor of a municipal corporation, be against public policy and sound morals to pay for constructive services (Warner v. Board of Educ. of City of N. Y., 14 A D 2d 300). Payment of such public money falls within the prohibition of the Constitution (see Mullane v. McKenzie, 269 N. Y. 369) ” (67 Misc 2d 851, 852-853). As noted above, the majority at the Appellate Division agreed, stating that ‘‘ the satisfaction of individual objections by a gift of public funds is counter to the provisions of section 1 of .article VIII of the New York State Constitution ” (39 A D 2d 685, 686).
The dissenters, Justices Mabkewich and Nunez, rejected the í i gift ’ ’ theory, finding instead that the grievance award was a bargained-for, contractual right, ‘ ‘ as binding as though set forth in the contract itself ’ ’. As such, they concluded, it “is no more a 1 gift ’ than any other award of damages for unlawful deprivation of an opportunity afforded by contract ” (39 A D 2d 685, 686). We agree.
*131 That an award of a collective bargaining grievance procedure is a legally enforceable contractual right as opposed to a proscribed gratuity is clear from both the provisions of the Taylor Law (Civil Service Law, § 200 et seq.) and our decision in Board of Educ., Union Free School Dist. No. 3, Town of Huntington v. Associated Teachers of Huntington (30 N Y 2d 122). As Chief Judge Ftjld stated in Huntington, the Taylor Law declares it the public policy of our State to encourage ‘ ‘ public employers and * * * employee .organizations to agree upon procedures for resolving disputes ” (Civil Service Law, § 200). In furtherance of this policy, it vests in employee organizations ‘ ‘ the right to represent public employees not only in connection with negotiations as to terms and conditions of employment but as to ‘ the administration of grievances arising thereunder ’ (Civil Service Law, § 203: italics supplied) ” (30 N Y 2d, at p. 131). As the United States Supreme Court has observed, “ [t]he processing of disputes through the grievance machinery is actually a vehicle by which meaning and content are given to the collective bargaining agreement * * * The grievance procedure is, in other words, a part of the continuous collective bargaining process ” (Steelworkers v. Warriors & Gulf Co., 363 U. S. 574, 581). A settlement arrived at through an agreed upon grievance procedure is thus as much a contemplated part of the parties’ collective bargaining agreement as any express term contained therein.
In support of its conclusion that payment of back salary as required by the Step Two Grievance Decision would constitute an unconstitutional gift of public funds, Special Term relied upon Matter of Mullane v. McKenzie (269 N. Y. 369) and Warner v. Board of Educ. (14 A D 2d 300, affd. 12 N Y 2d 924) for the proposition that actual services must be rendered before a claim for compensation may constitutionally be honored. Neither of these cases so holds. Far from requiring a rendition of actual services, Mullane and Warner merely expound upon the general principle that there must be a legal obligation on the part of the State or municipality before public funds can be paid to individuals. Impliedly, in each of these cases, such a legal obligation might be either statutory or contractual; neither would require actual services as a constitutional prerequisite where a legal obligation to pay compensation otherwise exists.
*132 In Mullóme, a rather narrow holding and one which is factually distinguishable from the instant situation, this court upheld a line of cases (see, e.g., Matter of Barmonde v. Kaplan, 266 N. Y. 214; Stemmler v. Mayor, 179 N. Y. 473) to the effect that, notwithstanding the wrongful nature of the termination, upon reinstatement a municipal officer or employee was not entitled lo back pay where during his termination his salary had been paid to another (see 269 N. Y., at pp. 372, 374, 376). On the rationale that the public should not be held twice liable for the same salary, it was found that there was no “ legal obligation ” to justify the second payment and that it would, therefore, be an unconstitutional gift of public funds. In so holding, this court struck down only that part of chapter 734 of the Laws of 1935 which sought to give retroactive effect to the amendment to then section 23 of the Civil Service Law (now § 77) in order to provide for payment upon reinstatement even where the same salary had been paid to another. While retroactive application of the amendment was disallowed on the ground that it provided “ extra compensation” and thus a “ gift”, prospective creation of such a legal obligation was held to be properly within the power of the Legislature. “It cannot be doubted ”, the court declared, ‘ ‘ that the Legislature had power to provide that in the future such a right should be attached to tenure of office. There the Legislature’s discretion in determining the rights and benefits which should attach to an office or position in the civil service and in determining how security of tenure shall be safeguarded is almost plenary. Then public moneys are used to meet the obligations to officers and employees in the civil service, which the Legislature could impose upon the State and municipal corporations. They are not used in any sense as a gift ” (269 N. Y., at p. 375). Indeed, today section 77 of the Civil Service Law does provide for payment of back compensation upon reinstatement, even though no services have been rendered in such a case.
Similarly, Warner v. Board of Educ. (14 A D 2d 300, affd. 12 N Y 2d 924, supra) turned on the failure of a legal obligation in a limited factual setting. There the right of a substitute teacher to compensation upon reinstatement after wrongful termination was in issue. Emphasizing the lack of contractual *133 protection in the relationship between a substitute teacher and the municipality, the Appellate Division determined that “ [i]n the case of such a. teacher ’ ’, it would be against public policy to pay for constructive services (see 14 A D 2d, at p. 303). The Warner court went on to distinguish Steinson v. Board of Educ. of City of N. Y. (49 App. Div. 143, affd. 165 N. Y. 431) wherein a regular tenured teacher was found to be entitled to compensation upon reinstatement — although once again no services had been rendered.
Moreover, in Matter of Boyd v. Collins (11 N Y 2d 228), this court expressly upheld the right of a tenured teacher to back pay upon reinstatement. Finding invalid an agreement whereby the petitioning teacher gave up her tenured status without the-requisite hearing and in return for the payment of a year’s salary, the lower courts reinstated the petitioner at the end of the year without requiring the return of the salary for that period during which no services were rendered. Writing for the majority, Chief Judge Desmond affirmed the entitlement to back pay, noting that after she was told to stop teaching the petitioner was under no obligation to present herself each morning for work “ since she had a valid permanent contract of employment ” (11 N Y 2d 228, 234-235). The payment of salary for the period during which no services were rendered was, therefore, pursuant to a contractual obligation and was not an unconstitutional gift.
In the instant case, the collective bargaining agreement, contemplating as it does a continuing process of grievance resolution through the prescribed grievance procedures, created an enforceable contractual right in the subsequent settlement. Absent a showing, not here present, that the grievance did not relate to the terms or conditions of employment, the settlement is as binding as any other arbitration award (Truck Drivers Union v. Riss & Co., 372 U. S. 517). Consequently, there was a legal obligation on the part of the municipality to comply with the settlement decision, and a payment thereunder cannot be considered a “ gift ”.
Accordingly, the order of the Appellate Division is reversed, the petition reinstated, and the matter remitted to Special Term for further proceedings not inconsistent with our determination.
*134 Chief Judge Fuld and Judges Breitel, Jasen, Gabrielli, Jones and Wachtler concur.
Order .reversed, with costs, and matter remitted to Special Term for further proceedings in accordance with the opinion herein.

. Article VIII ( § 1) of the New York State Constitution provides: “No county, city, town, village or school district shall give or loan any money or property to or in aid of any individual ”,

. Article XXXI (§ 31.1) of the agreement dealing with duration indicates an August 31,1972 expiration date. Expiration of the agreement would, of course, have no bearing on the contractual rights underlying this litigation since the grievance settlement was reached during the effective term of the agreement.

. Article VI of the parties’ collective bargaining agreement sets forth grievance procedures, section 6.1 specifying the general intent: “ The Board and the Union agree that they will use their best efforts to encourage the informal and prompt settlement of complaints and grievances which may arise between the Union, the employees and the Board. The orderly processes hereinafter set forth will be the sole method used for resolution of all complaints and grievances.” The procedures take the form of three successive steps, section 6.4 providing for resort first to the president of the college (Step 1) and then to the Chancellor (Step 2); and section 6.5 providing for arbitration (Step 3). Final settlement may take place at any step.

. A Step One or Step Two grievance settlement is as binding as a Step Three arbitration award (see Truck Drivers Union v. Riss & Co., 372 U. S. 517).