GABRIEL PIRO et al., Respondents, v RICHARD J. BOWEN, Individually and as City Manager of the City of Long Beach, et al., Defendants; CITY OF LONG BEACH, Appellant.

Second Department, August 11, 1980

**APPEARANCES OF COUNSEL**

*Guazzo, Silagi, Craner & Perelson, P. C. (Caesar C. Guazzo* and *Mark C. Rushfield* of counsel), for appellant.

*Baratta & Solleder (George J. Solleder, Jr.,* and *Bruno Baratta* of counsel), for respondents.

**OPINION OF THE COURT**

MARTUSCELLO, J.

On December 28, 1973 the appellant, City of Long Beach (the city), and Local 287 Uniformed Fire Fighters Association (the union) entered into a collective bargaining agreement.

The contract covered a period of three years and seven months and was to run from December 1, 1972 until June 30, 1976.

Subdivision B of article II of the agreement provided, in part, "All tours shall consist of a minimum of six (6) Fire Fighters". Article XVII of the agreement provided as follows: "It is agreed by and between the parties that the best interests of public safety as regards fire protection with a minimum complement of thirty-four (34) active Fire Fighters, shall be acceptable for the term of this agreement. However, at the reopening times of this contract, the subject shall once again be reviewed by the City and the Association for purposes of redefining the minimum complement, so as to consider increase to same. Notwithstanding any provision herein, it is agreed that upon a re-evaluation as to minimum complement, that in no event shall the presently agreed upon minimum be readjusted downward. The specific intent of this provision is to assure public safety standards as well as minimum job protection for the Fire Fighters."

The city suffered severe financial difficulties. Were it not for a last minute loan arrangement with a bank it would have been unable to meet its payroll for the 1973-1974 fiscal years. Therefore, notwithstanding the above-quoted job security provisions, the city as part of its efforts to balance its budget abolished 13 paid fire fighter positions effective July 1, 1975.[1] Almost immediately after the 13 fire fighters were informed of their termination, the 22 remaining members of the city fire department commenced a proceeding pursuant to CPLR article 78. They sought an injunction reinstating their dismissed co-workers on the grounds that the dismissal was a breach of the job security provisions of the agreement which required a minimum complement of 34 fire fighters.

Thereafter, a few months later, by summons and complaint dated September 25, 1975, the plaintiffs, consisting of the dismissed fire fighters and the union, commenced the instant action seeking reinstatement to their positions and back pay. The city moved for summary judgment but by stipulation of the parties the matter was adjourned pending decision by the Court of Appeals of the proceeding commenced by the 22 fire fighters.

On July 1, 1976 the Court of Appeals ruled on that proceed-

1. A dispute concerning a 14th fire fighter was settled by way of stipulation.

ing, in a decision entitled *Matter of Burke v Bowen* (40 NY2d 264). The court upheld the validity of the "job security" provision stating the following (p 267):

"While 'job security' is not a term or condition of employment subject to mandatory bargaining under the Taylor Law (Civil Service Law, § 204, subd 2), 'job security' for a reasonable period of time is a permissible subject for a public employer to negotiate, and to agree upon in a collective agreement. This is because there is no statute or controlling decisional law, or restrictive public policy prohibiting an employer from voluntarily agreeing to such a provision. (See *Matter of Board of Educ. v Yonkers Federation of Teachers*, 40 NY2d 268, decided herewith; *Matter of Susquehanna Val. School Dist. at Conklin [Susquehanna Val. Teachers' Assn.]*, 37 NY2d 614, 616-618.)

"As noted above, the 'job security' clause was explicit and provided that 'in no event shall the presently agreed upon minimum be readjusted downward.' The agreement extended for a reasonable period of time, three years and seven months, and was not negotiated in a period of legislatively declared financial emergency between parties of unequal bargaining power. Thus, the job security provision violates no public policy and the city was, therefore, free to agree to it in the collective agreement."

However, the court dismissed the petition of the 22 remaining fire fighters on the basis of the following rationale (p 267):

"In their petition, petitioners, the remaining firefighters, seek only an 'injunction' reinstating their dismissed brethren, in effect, specific performance of the job security provisions.

"The equitable remedy of specific performance is available in the court's discretion generally when the remedy at law, damages, would be inadequate (see *Wirth & Hamid Fair Booking v Wirth*, 265 NY 214, 222; Restatement, Contracts, §§ 358, 359). In this case, in the throes of a grave financial crisis, the city should not, as a matter of equity, be compelled to reinstate the dismissed firefighters.

"As for the dismissed firefighters they may be entitled to bring their own action for breach of the collective agreement. In that event, it may be that the remedy should be limited to that at law, namely, damages, subject to mitigation. But none of these issues are now before the court and none therefore may be passed upon."

After this decision further proceedings were continued in the instant action and ultimately the case went to trial. The only cause of action against the city to survive was the first one which alleged breach of the job security provision.[2]

At the conclusion of the trial two separate charges were presented to the jury. The jury was charged first on the issue of the city's liability. After the jury found for the dismissed fire fighters on the liability issue, a charge on damages was presented. The jury was instructed that damages must be measured by computing a sum of money which is equal to the earnings and fringe benefits that a fire fighter would have received during the period of July 1, 1975 to June 30, 1976, less earnings from other employment during the same period of time.

In accordance with this formula the jury rendered a verdict in favor of each of the dismissed fire fighters. Pursuant to the verdict a judgment was entered on March 23, 1979. The city appeals from this judgment. We affirm.

The city, *inter alia,* contends that the fire fighters should have proceeded by way of an article 78 proceeding; that an award of damages is against public policy; and that the jury was improperly instructed both on the issues of liability and damages. In my view these contentions lack merit.

I

The city contends that the fire fighters should have proceeded by way of an article 78 proceeding seeking reinstatement and that absent an order providing for their reinstatement they are not entitled to damages.

The Statute of Limitations for article 78 proceedings is four months (CPLR 217). The reason for requiring a public employee seeking reinstatement to his position to proceed by way of an article 78 proceeding is to assure the prompt submission of such claim *(Austin v Board of Higher Educ.,* 5 NY2d 430, 441). An examination of the case at bar shows that both the 22 retained fire fighters as well as the 13 dismissed ones promptly moved for relief. Therefore, the underlying policy reason for requiring an employee to proceed by way of an article 78 proceeding is satisfied.

Here, of course, reinstatement is no longer an issue since the Court of Appeals has explicitly ruled that it would be

---

2. All causes of action against individual defendants were dismissed.

inappropriate *(Matter of Burke v Bowen,* 40 NY2d 264, *supra).* The question therefore is one of damages. It is true that the general rule is that a discharged public employee cannot recover unpaid salary until he proves his right to the position from which he was discharged and that he should do so in an article 78 proceeding rather than an action at law for accrued salary *(Austin v Board of Higher Educ., supra; Feraca v Town of Esopus,* 63 AD2d 771; *Lester v Harris,* 60 AD2d 791, affd 46 NY2d 826; *Bloome v Glasser,* 33 AD2d 563, affd 26 NY2d 864; *Smith v Helbraun,* 24 AD2d 518; *Matter of Bush v Beckmann,* 283 App Div 1070; *Van Valkenburgh v Mayor,* 49 App Div 208). However, this general rule does not apply where the public employer has recognized that the employee was entitled to remain in his position (see *Toscano v McGoldrick,* 300 NY 156; *Forino v City of Troy,* 42 AD2d 647; *Smith v Helbraun, supra).* In addition, the fact that an employee may no longer be entitled to reinstatement, such as where the contract he was hired under has expired, does not preclude him from recovering as damages salary he would have earned during the contract term (cf. *Matter of Schwab v Bowen,* 41 NY2d 907; *Matter of Burke v Bowen, supra).*[3] In sum there are situations where a public employee can recover back salary in an action at law even though he has not established by way of an article 78 proceeding his right to reinstatement to the position from which he was terminated. For the reasons that follow I conclude that the case at bar is such a situation.

An examination of this case shows that the 22 remaining fire fighters commenced an article 78 proceeding for the benefit of those terminated. That proceeding concluded with the Court of Appeals decision in *Matter of Burke v Bowen (supra).* That decision, while denying reinstatement for reasons of equity, recognized the possibility of a damage award even without an order of reinstatement. The decision also specifically upheld the validity of the subject job security provision. Moreover, the city in its answer to the complaint in this action expressly conceded that the fire fighters' employment was "discontinued solely for reasons of economy." There

---

3. In the instant case the action was commenced before expiration of the contract. As indicated *supra,* the parties stipulated to an adjournment pending decision of *Matter of Burke v Bowen (supra).* To allow the expiration of the contract to affect the fire fighters' right to a damage award would not only violate fundamental fairness but would have the effect of encouraging municipalities to cease compliance towards the end of contract periods secure in the knowledge that there would be no award of monetary damages once the contract expires.

is, therefore, no question that the fire fighters were entitled to remain in their positions. Accordingly, even without obtaining an order of reinstatement, they may maintain an action at law seeking recovery of damages for breach of the collective bargaining agreement.

## II

■ The city contends further that an award of damages in the face of the fact that the fire fighters rendered no services since they were laid off violates public policy. The city seeks to buttress this argument by pointing to the fact that the subject "job security" provision is not a mandatory item of negotiation. I hold that a damage award is not precluded by public policy or other reasons.

Payment of public moneys as damages for breach of a contractual obligation on the part of the State or a municipality is not within the constitutional prohibition forbidding donations from the public purse (NY Const, art VIII, § 1; *Board of Educ. v New York State Div. of Human Rights,* 42 AD2d 49, 54, affd 35 NY2d 673 on opn of Mr. Justice HOPKINS at the Appellate Division; *Matter of Antonopoulou v Beame,* 32 NY2d 126, 131). While the Constitution requires that there be a legal obligation on the part of the State or municipality before public funds can be paid to individuals, such a legal obligation may be either statutory or contractual *(Matter of Antonopoulou v Beame, supra).*

Assuming that one of the dismissed fire fighters had an individual contract of employment with the city, he could recover in an action at law the damages awarded by the jury in this case, namely, the wages which would have been earned under the contract for the full period less mitigation (see *Flanagan v Board of Educ.,* 47 NY2d 613; 9 Encyclopedia New York Law, Damages [Fuchsberg], § 534). We perceive no reason to distinguish between enforcement in an action at law of a collective bargaining agreement on the one hand and an individual employment contract on the other.

Further, once it has been determined that the subject "job security" provision is valid—as it has been here *(Matter of Burke v Bowen,* 40 NY2d 264, *supra)*—its enforceability should not be and is not dependent upon whether it is a term or condition of employment subject to mandatory bargaining (see *Matter of Yonkers Federation of Teachers v Board of Educ.,* 58 AD2d 607, affd 44 NY2d 752).

To hold otherwise after finding that the job security provision is valid would be to render it "useless" *(Matter of Board of Educ. v Yonkers Federation of Teachers,* 40 NY2d 268, 275). No public policy would be served by such a result since *Matter of Board of Educ. of Yonkers City School Dist.* recognizes that an employee's aim in negotiating job security—elimination of fear of being out of a job—"may be critical to the maintenance and efficiency of public employment" (p 275).

While the foregoing establishes the invalidity of the contention that public policy per se bars an award of damages for breach of a job security provision the issue requires further attention in view of the city's grave financial situation.

The Court of Appeals in *Matter of Burke v Bowen (supra,* p 267) stated that in view of the city's "grave financial crisis, the city should not, as a matter of equity, be compelled to reinstate the dismissed firefighters" and that "it may be that the remedy should be limited to that at law, namely, damages, subject to mitigation." While concededly the court did not address the public policy aspect of a damage award, it seems clear beyond cavil that the court, cognizant of the city's financial condition, would not discuss an award of damages if it deemed such an award violative of public policy. Instructive in this regard is *Pettinelli Elec. Co. v Board of Educ.* (56 AD2d 520, 521, affd 43 NY2d 760 on the memorandum at the Appellate Division), where the following statement was made: " 'Financial difficulty or economic hardship, even to the extent of insolvency or bankruptcy' is not such impossibility as to excuse a defendant from liability in damages for failure to perform the contract. *(407 East 61st Garage v Savoy Fifth Ave. Corp.,* 23 NY2d 275, 281.)"

Accordingly, we conclude that the city may not because of financial difficulties unilaterally abrogate a collective bargaining agreement and that a damage award may be imposed for breach of such contract.

### III

The remaining issue to which we address ourselves is the charge to the jury. It is the city's contention that the charge both on liability and damages was erroneous.

■ As to the charge on liability, I note at the outset that the city's failure to raise any objection at trial constitutes a waiver (CPLR 5501, subd [a]).

In any event, an examination of the charge shows that the court instructed the jury that in order for performance to be excused on financial grounds, it must be financially impossible; that mere insolvency is not enough; and that the burden of proof is on the city to prove that it was impossible to provide people with essential services and at the same time comply with the job security provisions. In view of the validity of the subject job security provision this charge cannot be deemed unfair to the city's position (see *Pettinelli Elec. Co. v Board of Educ., supra*).

As to damages the court, consistent with a stipulation between the parties, instructed the jury as follows:

"The measure of damages in this case shall be awarded to each plaintiff in an amount not to exceed the last column in Court Exhibit D; that's the right of course, the right-hand column of Court Exhibit D. This Exhibit D, the figures represent the base pay that a plaintiff would have earned had he been employed by the City, plus fringe benefits he would have received minus earnings from other sources for the period involved in this case July 1, 1975 to June 30th, 1976.

"Take Exhibit D and return to the jury room, deliberate and then make your verdict."

Subsequently, in response to its inquiries, the jury was told the following:

"THE COURT: With respect to the three inquiries from the jury and in as much as it's evident that the jury doesn't have a clear conception of what the rule for fixing damages is and in the light of the fact that the parties are stipulating as to testimony which would be given by plaintiffs if the plaintiffs were called on the subject of damages, that stipulation being as follows:

" 'It is stipulated by the plaintiffs and the defendant that if the plaintiffs were called to the stand and sworn, that each plaintiff would testify that the figures shown for each of the items related to him would be as shown in Court's Exhibit D. These figures are for loss of wages, for loss of fringe benefits and for the earning obtained by the plaintiff from other sources. The jury may consider these figures as if the plaintiffs had testified to these figures in Court, under oath.' "

Thereafter the city asked the Judge to instruct the jury "that the measure of damages in this case shall be all the evidence which they have heard". The court refused to give

such a charge stating that "there is evidence in the case which is not relevant to the issue of damages."

■ The city then raised further objections to the charge. The appropriateness of those objections to the issue of damages is not completely apparent. Rather, it seems that they relate to the issue of whether there can be a damage award absent reinstatement. As previously indicated we hold there can be.

■ The issue about the charge on damages therefore resolves itself into whether the measure of damages should be lost wages for the period the fire fighters were to be employed under the contract (July 1, 1975—June 30, 1976) less earnings from other sources. In my view it should be.

In *Matter of Yonkers Federation of Teachers v Board of Educ.* (44 NY2d 752, *supra),* an arbitrator awarded to each teacher who was improperly terminated damages equal to that which would have been required to have been paid to him for the period from the date of termination to the date of the offer of reinstatement, less other earnings. The Court of Appeals, in affirming our confirmation of the award, stated (p 753): "The arbitrator determined that, had the city used its taxing powers to the full, the board's fiscal needs could have been met without discharging teachers for budgetary reasons —precisely the result sought to be avoided by the job security clause. This determination cannot be said to be irrational. Indeed, as was observed by the Appellate Division: 'to permit the board of education to renege on its agreement by merely claiming a financial crisis, the very thing the clause was designed to protect the teachers against, would result in the collective bargaining process, and the sanctity of agreements reached thereby, being thrown into disarray.' "

While we of course are not dealing with an arbitration proceeding nor with a case where reinstatement may be ordered, the apparent rationale for upholding the arbitrator's award in *Matter of Yonkers Federation of Teachers* (similar to the award made here) is applicable at bar too. The city here did not use its full taxing powers. Anything less than the damage awards granted (cf. Civil Service Law, § 77; *Matter of Kerr v Weisenberg,* 65 AD2d 815, affd 49 NY2d 870) would undoubtedly have the effect of throwing into disarray the collective bargaining process and agreements reached thereby. A municipality may not disregard its collective bargaining agreements with impunity.

We have examined the city's other contentions and find them to be without merit.

Accordingly, the judgment should be affirmed.

Titone, J. P., Mangano and Rabin, JJ., concur.

Judgment of the Supreme Court, Nassau County, entered March 23, 1979, affirmed, with costs.