OPINION OF THE COURT
Norman C. Ryp, J.
A. ISSUES
Who can sell municipal agency hearing transcripts, employee stenographers or employer New York City Finance Department? Who and what determines their sale (and collects its proceeds) in the presence of a 30-year approved practice and agency regulations, but absent statutory sanction? Is this long-term practice an employee protected benefit, or a violation of the Freedom of Information Law (FOIL; Public Officers Law § 84 et seq.), or an unconstitutional "gift” by a municipality contrary to NY Constitution, article VIII, *425 § 1? The last are issues of first impression calling for this court’s first expression.
B. PROCEDURAL HISTORY
This CPLR 2221 motion by plaintiffs, Philip R. Michael, as Commissioner of, and the New York City Department of Finance (Finance) seeks leave to renew and reargue this court’s denial, by decision, dated October 17, 1983 (and Jan. 10, 1984, order entered thereunder — original decision and order) of its prior CPLR 3212 motion for summary judgment (No. 85-10/28/82; original motion) and for CPLR 3001 and 3017 declaratory judgment relief requested in their amended complaint.
This court’s original decision and order granted the CPLR 3212 cross motion for summary judgment by defendants, the Communications Workers of America AFL-CIO (CWA) certified exclusive collective bargaining agent for Finance’s stenographic specialists (stenographers) and its president, Glenn E. Watts, dismissing the amended complaint. This court then directed the matter to proceed to conclusion of the previously commenced (by CWA’s Local 1180) and then pending arbitration proceedings with the Office of Collective Bargaining (OCB). Such is entitled Matter of City of New York & Communications Workers of Am., Local 1180 (docket No. A-1385/81).
Before this court’s original decision (which sets forth the prior chronology) and order, while the original motion was sub judice, and then unknown to this court, OCB’s arbitrator Benjamin H. Wolf rendered an opinion and award, dated November 13, 1982 (OCB-O/A), determining the contractual issue in favor of CWA, subject to judicial review under CPLR article 75, which was stayed pending court determination of the issues of law (i.e., FOIL and violation of NY Const, art VIII, § 1).
Now, over one and one-half years after OCB’s arbitrator’s opinion and award, Finance seeks leave to renew and reargue under CPLR 2221 this court’s original above decision and order (which Finance apparently appealed), based upon the above issues of law left open by the OCB arbitrator.
C. FACTS
The facts are uncontroverted and basically reflected in the parties’ stipulation of fact (S/F). Paragraph 2 thereunder, inter alia, stated "the parties agree that hearing transcripts *426 are not public records within the meaning of the Freedom of Information Law * * * and in fact are confidential records to any person other than the taxpayer and the taxpayer’s authorized representative.”
Finance’s underlying amended complaint originally sought a declaratory judgment (following withdrawal of its petition challenging arbitrability) that it is unlawful for Finance to allow its employed stenographers to charge taxpayers or their representatives for transcript copies of any Finance administrative agency hearing. Finance sought to annul its own former long-standing (1952-1981) established practices, policies and procedures (i.e., Finance Rules of Practice rule 15) that allowed its stenographers to bill, sell and retain all monetary proceeds for transcripts. These 30-year policies and procedures were unilaterally terminated and reversed by Finance’s director, Bureau of Hearings, through an administrative memorandum, dated June 9, 1981.
Since December 15, 1981, Finance requested each stenographer to sign the following statement: "As a condition of employment as a Steno-Specialist with the New York City Department of Finance, it is clearly understood that copies of minutes taken at hearings may not be sold by the undersigned.”
In the above OCB arbitration proceeding (docket No. A-1385-81), CWA challenged Finance’s unilateral discontinuance of its past 30-year practice of allowing stenographers to charge and collect fees for the sale of transcripts taken at all formal hearings, using Finance’s equipment and materials, except for the stenographers’ own machines, as a term of employment contractually protected under the umbrella of the collective bargaining agreement (C/B agreement) with Finance, for the periods July 1, 1980 to June 30, 1982, and the city-wide umbrella municipal coalition economic agreement (MCEA) as extended from 1980 to 1982. CWA claimed violations of article VI § IB, C/B agreement and MCEA §§ 3 and 6. On or about January 29, 1982, Finance filed, but later withdrew, on May 29, 1982, a petition challenging arbitrability.
Finance then countered that allowing stenographers to sell transcripts is contrary to public policy and law: legislatively codified under FOIL, which gives Finance, as a governmental agency, the responsibility to insure access and power to sell the transcripts to the taxpayers; and under the NY Constitution, article VIII, § 1, as an unconstitutional gift of public funds and public policy.
*427 The OCB arbitrator’s O/A, following a 22-page opinion, issued the following award:
"1. The City (Finance) violated the contractual (C/B and MCEA) rights of the stenographers when it ceased to permit the practice of selling copies of transcripts to the public; and stayed until
"2. If and when the Court(s) has (have) decided the issues of law (FOIL and NYS Const., Art. 8, § 1) involved in this dispute and the decision is favorable to CWA the City (Finance) shall reinstate the practice and reimburse the stenographers at the rate of 75^ per page.”
It is those very issues of law (FOIL; NY Const, art VIII, § 1) that this court confronts in this dual-pronged Finance’s CPLR 2221 motion for leave to renew and reargue.
D. FINANCE’S CPLR 2221 MOTIONS
1. Reargument
Finance’s CPLR 2221 motion for leave to reargue is granted (Foley v Roche, 68 AD2d 558, 568 [1st Dept 1979]; Pro Brokerage v Home Ins. Co., 99 AD2d 971 [1st Dept 1984]).
A motion to reargue is designed to give a party a chance to convince the court that relevant facts were overlooked or misapprehended or any controlling principle of law was misapplied. It is not a vehicle to permit an unsuccessful party to again raise the same questions previously decided, or raise legal arguments different from those advanced in the original application. The motion to reargue is addressed to the court’s reasonable discretion and may be granted where the court is asked to reconsider its prior order (Barry v Good Samaritan Hosp., 86 AD2d 853 [2d Dept 1982], revd on other grounds 56 NY2d 921 [1982]).
In this case, Finance bases its CPLR 2221 reargument motion on both statutory (FOIL) and constitutional (NY Const, art VIII, § 1) grounds. Such respectively were raised, but not reached, and never submitted for consideration in this court’s original decision and order wherein subject prior uncontroverted facts are recited. Upon these issues the OCB-O/A deferred to this court.
Thus, in the interest of justice, judicial economy and the sound discretion of this court, it is appropriate to grant plaintiff’s CPLR 2221 motion to reargue (Barry v Good Samaritan Hosp., supra, citing Foley v Roche, 68 AD2d, at p 567).
*428 2. Renewal
Finance’s CPLR 2221 motion for leave to renew, if not moot, is denied. Such a motion to renew must be based upon presentation of material facts which existed but where not known at the time of the original motion. In addition, movant should offer a valid excuse for not submitting the new facts upon the original application, and may not later present a "different legal argument merely because he was unsuccessful upon the original application.” (Foley v Roche, supra, p 568; Cirfico Holdings Corp. v GTE Prods. Corp., 99 AD2d 939 [1st Dept 1984].)
Presently, the only "new facts” are the stipulation of facts submitted, and the NYC-OCB-O/A (rendered 17 days after submission of the original motion to this court) wherein the FOIL and NY Constitution, article VIII, § 1 arguments were previously (before submission of the original motion) raised. These are not newly known "material facts,” but were in existence two and one-half weeks after submission of the original motion and long before this court’s original decision. Thus, this, Finance’s CPLR 2221 motion for leave to renew merits denial (Foley v Roche, supra; Cirfico Holdings Corp. v GTE Prods. Corp., supra).
E. FOIL (PUBLIC OFFICERS LAW, ARTICLE 6, § 84 ETSEQ.: L 1977, CH 933, EFF JAN. 1, 1978)
As noted above, Finance stipulated that its hearing transcripts are not public "records,” as defined under FOIL (Public Officers Law § 86 [4]), and are confidential to any person other than the taxpayer and authorized representative for whom claims FOIL access rights, at 25^ per page (Public Officers Law § 87 [1] [b] [iii], as amended by L 1983, ch 80, eff May 10, 1983).
This court notes FOIL’S legislative declaration (Public Officers Law § 84) finds that
"a free society is maintained when government is responsive and responsible to the public * * *
"it is incumbent upon * * * localities to extend public accountability * * *
"and that the public * * * should have access to the records of government”.
(Matter of Fink v Lefkowitz, 47 NY2d 567, 571 [1979].) It further notes that Public Officers Law § 87 is entitled "Access *429 to agency records”, and the definition of "Agency” includes "any * * * municipal department * * * bureau” (Public Officers Law §86 [3]), such as Finance, and that "[e]ach agency shall, in accordance with its published [FOIL] rules, make available for public inspection” (Public Officers Law §87 [2] [records]). This unambiguously plain and clear FOIL statutory language (McKinney’s Cons Laws of NY, Book 1, Statutes § 92 [b]; see, Roth v Michelson, 55 NY2d 278, 283 [1982]) reveals the legislative intent to distinguish, not merge the "public” as FOIL petitioner, and governmental "agency”, whether State, municipal or local (i.e., Finance) as FOIL respondent.
Normally it is a "person” or "member of the public” (individual, corporate, unincorporated association or media) that seeks access by wielding the FOIL sword, while the government or one of its subdivisions or agencies that blocks or limits public access by raising the FOIL access shield (Matter of Fink v Lefkowitz, supra; American Broadcasting Cos. v Siebert, 110 Misc 2d 744 [Sup Ct, NY County 1981]). In this case, Finance seeks to bridge or erase this legal polarity (freedom v security), but lacks legal "standing” to, in effect, represent its adversary taxpayers.
Parallel Federal case • law construing FOIL’S statutory model, the Federal Freedom of Information Act (FOIA; 5 USC § 552 et seq.), is instructive in construing FOIL, which is patterned after FOIA (Matter of Fink v Lefkowitz, supra, at p 572; Matter of Quirk v Evans, 116 Misc 2d 554 [Sup Ct, NY County 1982]). Federal courts have held that corporations lacked FOIA "standing” to assert a right of access to governmental records and further stated that FOIA refers only to actions brought by "individuals” (defined as U.S. citizen or lawfully admitted alien [5 USC § 552a [a] [2]). FOIA was created to give the public a judicially enforceable right to secure information from public hands (Cell Assoc. v National Insts. of Health, 579 F2d 1155, 1157 [9th Cir 1978]; Sears, Roebuck & Co. v General Servs. Admin., 384 F Supp 996, 1004 [US Dist Ct, DC 1974], affd 509 F2d 527 [DC Cir 1974]).
As noted above, in FOIL’S legislative declaration (Public Officers Law § 84) "government” and "public” are juxtapositioned at opposite ends of the statutory poles. Thus, this court finds that Finance, as a governmental agency, cannot be merged with the "public” (FOIL petitioner), and, therefore, lacks "standing” to raise and assert FOIL as a petitioning sword rather than an exemption shield (see, Matter of Short v Board of Managers, 57 NY2d 399, 404 [1982]; Matter of Farb *430 man & Sons v New York City Health & Hosps. Corp., 62 NY2d 75, 79-81 [1984]) upon behalf of "the taxpayer or the taxpayer’s authorized representative”.
F. NY CONSTITUTION, ARTICLE VIII, § 1
NY Constitution, article VIII, § 1 provides that "no city,” such as New York City, including its agency, Finance, "shall give or loan any money or property to * * * any individual * * * corporation or association” (formerly § 10, in part, renum 1, amended Nov. 8, 1938; Nov. 3, 1959; Nov. 5, 1963; Nov. 2, 1965, eff Jan. 1, 1966).
This State constitutional mandate forbade donations from or raids upon the public purse to or for the benefit of (Board of Educ. v New York State Div. of Human Rights, 42 AD2d 49, 54 [2d Dept 1973], affd 35 NY2d 674 [1974]) a private association, including a labor union, as CWA, in the absence of a legal obligation, statutory or contractual (see, Matter of Antonopoulou v Beame, 32 NY2d 126, 131 [1973], allowed payment to college lecturer of back salary grievance settlement by New York City Board of Higher Education with United Federation of College Teachers union; Piro v Bowen, 76 AD2d 392, 398 [2d Dept 1980], upheld payment to fire fighters of contractual damages found by court for breach of job security provision in collective bargaining agreement by City of Long Beach after suit by United Fire Fighters Association union; or without corresponding benefit for continued work or past services under a previous agreement on compensation; see, Matter of Taylor v McGuire, 100 Misc 2d 834, 837-838 [Sup Ct, NY County 1979, Kassal, J.], directed payment of lump sum for past overtime and sick leave accumulation to retired First Deputy Police Commissioner by New York City, under postretirement mayoralty personnel order; Local 456 Intl. Brotherhood of Teamsters v Town of Cortlandt, 68 Misc 2d 645, 649 [Sup Ct, Westchester County 1971], allowed town to make health benefit payments to trusteed union welfare fund under public policy of Insurance Law art 3-A and Civil Service Law art 14).
Most recently, the Court of Appeals affirmed, within the NY Constitution, article VIII, § 1 bar, the Rochester City Council’s right to statutorily recognize as a "moral obligation” or "equitable claim” repayment of $45,000,000 of unconstitutional but unprotested real property taxes, but not as a gift or gratuity. The distinction is "decided [upon the] fact [of each case] 'The *431 Constitution does not prohibit the Legislature from doing in behalf of the State what a fine sense of justice and equity would dictate to an honorable individual. It does prohibit * * * what only a sense of gratitude might impel a generous individual to do.’ ” (City of Rochester v Chiarella, 98 AD2d 8, 11 [4th Dept 1983], affd 63 NY2d 857 [1984].)
Finance, on this point, relies upon Village of Wellsville v AFSCME (103 Misc 2d 151 [Sup Ct, Allegany County 1979]). In Wellsville, the court held that a village’s past practice (over 40 years) to charge resident water and light department employees minimum water and sewer rent, regardless of consumption, not treated as employment expenditures by the village or salary or income by the employees, was an unconstitutional gift by the municipality to its employees in violation of NY Constitution, article VIII, § 1, justifying subsequent judicial intervention and vacatur (103 Misc 2d, at pp 154, 155).
The court, interestingly, if. not inconsistently, held, in denial of the village’s motion to permanently stay arbitration, that the question of whether or not such disputed past practice is a protected benefit under the collective bargaining agreement should be first determined by the arbitrator. However, the court per Judge E. M. Horey, Solomonically continued, if determined said past practice was a "protected benefit”, the arbitrator should "grant only such relief as is consistent with the legal and constitutional prerogatives of the village” (103 Misc 2d, at p 155).
Clearly, Wellsville and subject case, while superficially similar, are factually and legally distinguishable. First, in Wells-ville, there was geographic preferential discrimination in favor of resident village employees, and prejudice against nonresident village employees, while there is no geographic discrimination herein by Finance in favor of or against any stenographers. Second, there was further discrimination by a preferential water and sewer rent discount in favor of resident village employees as against all other village residents and taxpayers, who subsidized and were fiscally penalized, while herein, the taxpayers pay the same transcript rate or fees to Finance or the stenographers. Third, the preferential water and sewer discount was unrelated and unconnected to their employment duties or performance, while herein, such were a necessary and integral part of stenographers’ employment duties and performance. Finally, and most critically, the preferential water and sewer rent discounts were not treated as employment expenditures by the village or salary or in *432 come by the employees, negating any contractual consideration.
In contrast, herein the sale of transcripts by and resulting income to stenographers was clearly deemed additional salary (at least $1,000 per year in addition to their $13,693 per year minimum union contract salary) by the stenographers for 30 years, thus, supporting contractual consideration and negating a NY Constitution, article VIII, § 1 unconstitutional gift or loan of money.
Furthermore, the stenographers transcribed the minutes during their normal workday and approved overtime using Finance’s supplies and equipment, except for the stenographers’ own machines. This may have been treated as Finance employment expenditures supporting additional contractual consideration in negation of a NY Constitution, article VIII, § 1 unconstitutional gift or loan of property. This was confirmed by the NYC-OCB O/A which found Finance violated the contractual rights of the CWA stenographers.
There are several other factors to be considered that strengthen CWA’s position on this issue. First, is the length of time, 30 years, from 1952-1982, spanning five mayoralty administrations of all political persuasions (Vincent R. Impelliteri — 1950-1953—Experience; Robert F. Wagner — 1953-1965— Democratic-Liberal; John V. Lindsay — 1965-1973—Republican and Liberal; Abraham D. Beame — 1973-1977—Democratic; Edward I. Koch — 1977 to date — Democratic and Republican). This practice was not only recognized by Finance but codified in Finance’s Rules of Practice rule 15 and existed at the time of filing of CWA’s arbitration procedure.
Second, is the applicability of equitable estoppel or estoppel by acquiescence of Finance as a municipal agency, in its corporate or proprietary capacity, in the exercise of its contractual powers (Planet Constr. Corp. v Board of Educ., 7 NY2d 381 [I960]; see, Seif v City of Long Beach, 286 NY 382 [1941]; Fallica v Town of Brookhaven, 69 AD2d 579 [2d Dept 1979]). This is distinguished from the municipality or its public officials acting within a governmental capacity to which equitable estoppel does not apply (King v City of Newburgh, 84 AD2d 388 [2d Dept 1982]; see, 21 NY Jur, Estoppel, § 82).
Herein, Finance’s participation in this 30-year practice makes it inescapable that the fees from the sale of transcripts were not merely additional income, but part of consideration for the stenographers’ salary, frozen into MCEA §§ 3 and 6. Such fees in lieu of salary were a saving to the general *433 municipal taxpayer that could not be changed unilaterally by Finance especially so soon after Finance bargained with CWA over the stenographers’ compensation and fringe benefits.
Third, as noted in this court’s original decision and order, such fees from the sale of transcripts to parties (Judiciary Law § 300; CPLR 8002), although not to Judges in their discretion (see, Judiciary Law §§ 299, 302; Alweis v Evans, 123 Misc 2d 627 [Sup Ct, Monroe County 1984], which upheld their constitutionality), have been legislatively sanctioned for every New York State Office of Court Administration (OCA) court stenographer (see, Judiciary Law § 300; CPLR 8002; Matter of Burke v O’Brien, 51 AD2d 1040 [2d Dept 1976]).
If the sale and collection of fees by Finance’s stenographers are an unconstitutional gift of public moneys, or funds, in violation of NY Constitution, article VIII, § 1, this would likewise apply to the long-time practice of court stenographers and their above statutory authority.
These statutes (Judiciary Law § 300, as added by L 1909, ch 35, formerly § 301, as renum § 300 by L 1945, ch 649, § 150; CPLR 8002, as added by L 1962, ch 308, as amended by L 1965, ch 980, § 1, as amended by L 1973, ch 458, § 1), while the beneficiary of a strong presumption of constitutionality (see, McKinney’s Cons Laws of NY, Book 1, Statutes § 150 [a]-[c]), and never so challenged from 1909 to date, cannot, by the fact of enactment, furnish a constitutional patina for an unconstitutional gift or loan in violation of NY Constitution, article VIII, § 1. Thus, if this court were to sustain Finance’s State constitutional argument, then implicitly (although not directly since not in issue herein) Judiciary Law § 300 may not pass State constitutional muster. Such would conflict with common sense, the municipal collective bargaining process, reason, fairness and equity. (See, City of Rochester v Chiarella, supra.)
CONCLUSION
Accordingly, Finance’s CPLR 2221 motion for leave to reargue is granted; but renewal is denied. Upon reargument, for the foregoing reasons set forth above on the issues raised by Finance on FOIL and NY Constitution, article VIII, § 1, the original decision of this court, dated October 17, 1983, denying Finance’s CPLR 3212 and 3001 motions for summary judgment and declaratory judgment are adhered to, in all respects, except as set forth hereinabove.