*835 OPINION OF THE COURT
Joan B. Lefkowitz, J.
Pursuant to a collective bargaining agreement containing an arbitration clause the respondent Teachers’ Association served a demand for arbitration. In timely fashion, by order to show cause, petitioner, the Board of Education of the Ramapo Central School District, has moved for an order pursuant to CPLR 7503 (b) to stay arbitration.
FACTUAL BACKGROUND AND ISSUES
The issue sought to be arbitrated is whether petitioner may be compelled to reinstate its practice of 30 years of paying salaries (presently over 22 pay periods), where the first check for the beginning of the school year in September included a sum for services not yet performed. Petitioner in 1991 stopped issuing payment for services not yet rendered in its first check in September. Significantly, the end result on an annual school year basis is that teachers receive exactly the salary they are to be paid, no more and no less. The narrow question concerns the timing of the payments.
Petitioner contends that its former practice violates article VIII, § 1 of the NY Constitution and subdivision (3) of section 3015 of the Education Law. Such violations, it is contended, cannot be arbitrated as any award directing petitioner to reinstate its prior practice would violate public policy.
Respondent contends that the potential award will not be violative of public policy and petitioner can move to vacate or block confirmation if such an award is made (CPLR 7509, 7511).
PUBLIC POLICY — UNCONSTITUTIONAL GIFTS
Initially, it should be noted that respondent’s reliance on County of Orange v County Employees Unit (76 AD2d 878) for the proposition that the employer must negotiate the timing of paychecks for advance payments is misplaced. County of Orange (supra) involved a discredited lag payroll where the employer was not paying for one week’s worth of work until some future date, whereas prior practice required payment “for all work performed up to the date of payment” (76 AD2d, supra, at 878). At bar, the prior practice reflected payment for services not yet rendered.
A stronger case for the proposition asserted is Matter of *836 Niagara Falls City School Dist. (15 PERB ¶ 4508) where it was ruled improper for the public employer to unilaterally change the date checks would issue so as to reduce but not eliminate some advance payments. The question of illegality, if any, under the Constitution was not pursued and the court does not find the case persuasive precedent in this area of teacher salary involving section 3015 (3) of the Education Law.
Petitioner vigorously contends that prepayment for services that may never be rendered is in violation of the prohibition against gifts of public moneys in article VIII, § 1 of the NY Constitution (see also, art VII, § 8 [1]). It is contended that if respondent prevails at arbitration the only award an arbitrator can make is to direct prepayment in the first check issued, which would violate the constitutional prohibition.
Petitioner relies upon Matter of Boyd v Collins (11 NY2d 228 [1962]) and Hansell v City of Long Beach (61 AD2d 84 [2d Dept 1978]) which relied on Matter of Boyd. However, both cases turned on the issue that public moneys would be paid for services never intended to be rendered and that constituted a violation of article VIII, § 1 of the NY Constitution. That is not this case. Indeed, in Matter of Boyd (supra), the Court of Appeals sustained an award of back pay to a teacher for services not rendered. Furthermore, Matter of Boyd was overruled (albeit on another ground) in Matter of Abramovich v Board of Educ. (46 NY2d 450 [1979], cert denied 444 US 845 [1979]) and, therefore, the authority of both cases relied on by petitioner has been somewhat undercut.
The prohibition in article VIII, § 1 reads in pertinent part, with exceptions not relevant here: "No county, city, town * * * or school district shall give or loan any money or property to or in aid of any individual” (emphasis added). The quoted provision parallels a similar prohibition against gifts of State moneys found in article VII, § 8 (1) of the NY Constitution. An excellent summary of the historical underpinnings of the above provisions is contained in the Report on State Finance by the Temporary State Commission on the 1967 Constitutional Convention (Pamphlet No. 8, ch 5, at 105-123 [hereinafter referred to as 1967 Report]).
The original prohibition against gifts of State moneys was in the 1846 Constitution and its purpose was to prevent raids on public moneys for private gain. (Matter of Mahon v Board of Educ., 171 NY 263 [1902].) In 1874 the Constitution was *837 amended to add a prohibition against gifts by local governments (1967 Report, op. cit., at 109). In 1938 the Constitution was again amended to add school districts as subject to the restriction, but the reason for such addition is "not clear” (1967 Report, op. cit., at 112; cf., Union Free School Dist. No. 3 v Town of Rye, 280 NY 469, 474 [1939]).
Nevertheless, the over-all purpose of these provisions was designed to prevent improvidence and to safeguard the credit and financial resources of the State. (People v Ohrenstein, 77 NY2d 38, 51 [1990]; Local 456 Intl. Bhd. of Teamsters v Town of Cortlandt, 68 Misc 2d 645 [Sup Ct, Westchester County 1971].) In Matter of Teachers Assn. (Board of Educ.) (34 AD2d 351, 353 [2d Dept 1970]), Mr. Justice Hopkins, in referring to article VIII, § 1, stated: "This provision, like the prohibition directed toward the State itself in section 8 of article VII of the State Constitution, was intended to curb raids on the public purse for the benefit of favored individuals or enterprises furnishing no corresponding benefit or consideration to the State”.
This court is of the opinion that the public policy of preserving the public fisc inherent in the constitutional mandates is very strong, identifiable and not subject to arbitration. Therefore, the next question to be addressed is whether an award by an arbitrator would necessarily violate the constitutional prohibition.
Respondent relies on Board of Educ. v Associated Teachers (30 NY2d 122 [1972]), which upheld a contract provision to pay a retiring teacher, who gives advance notice of retirement, additional moneys in the last year of teaching. The Court of Appeals in the cited case found that the constitutional provision against gifts of public moneys was not offended where there was consideration for the moneys to be paid (there, in the form of a guaranty that the teacher would remain that last year [supra, at 128]). A similar result was reached in Matter of Teachers Assn. (Board of Educ.) (34 AD2d, supra, at 351), where Justice Hopkins considered the question on behalf of a majority of the Appellate Division, Second Department in holding that an agreement to pay a percentage of unused sick leave accruals to the teacher on retirement, or to the estate on death, was a form of deferred compensation not violative of the Constitution. However, in both of the last two cited cases payment was made for services already rendered or as services were being rendered, not, as sought here, in advance of such services.
*838 That distinction appears significant as the State Comptroller in Opinion No. 82-364 has ruled that prepayment of teacher salaries in their first paycheck violated the constitutional prohibition and section 3015 of the Education Law. (1982 Opns St Comp No. 80-364, at 460.) In a letter to petitioner’s attorney, the counsel’s office to the State Education Department has taken the same position. (See also, Matter of Booth, 73 St Dept Rep 53 [1952]; Matter of Lederman, 72 St Dept Rep 119 [1951]; 1 Ed Dept Rep 736, No. 37.)
Respondent, however, argues that there is no violation of the constitutional prohibitions where the obligation to pay for service is embodied in a collective bargaining agreement (citing, inter alia, Matter of Antonopoulou v Beame, 32 NY2d 126 [1973] [award of back pay]; Matter of Security & Law Enforcement Employees Dist. Council 82 [County of Albany], 96 AD2d 976 [3d Dept 1983], affd on opn below 61 NY2d 965 [1984] [same]). However, these cases and their ilk are premised upon the breach of a contractual obligation that itself was not invalid. (See, Piro v Bowen, 76 AD2d 392 [2d Dept 1980], lv denied 52 NY2d 702 [1980].) At bar, the agreement calls for payment in advance of services to be rendered and it is clear as discussed later, that such payment does violate section 3015 of the Education Law, so that the cited cases do not aid respondent.
However, there is a good-faith obligation in every agreement to perform the contract. (Van Valkenburgh v Hayden Publ. Co., 30 NY2d 34, 45 [1972]; Components Direct v European Am. Bank & Trust Co., 175 AD2d 227, 229 [2d Dept 1991].) At bar, the teachers are legally obligated to perform their services in the future and will have performed part of the expected service at the time of receiving their first check. Under such circumstances the court does not believe that prepayment of about one half of l/22nd or l/26th of salary in advance of service constitutes a "gift” of public moneys. To the extent services are not rendered (and assuming sick days and vacation days have been exhausted), the overpaid teachers would have to return the excess salary. (See, Matter of Walsh, 21 Ed Dept Rep 467 [1982]; Matter of Sarmiento, 18 Ed Dept Rep 108 [1978].)
Stated differently, the implicit obligation to perform coupled with the contractual promise to be in attendance over the live span of the agreement (apart from resignation, retirement, illness and vacation) is sufficient consideration to support the prepayment of part of the teacher’s salary. The court is aware *839 of the fact that in diverse circumstances the State Comptroller has ruled against prepayment as violative of the State Constitution and other statutes (see, 1979 Opn St Comp No. 79-634, at 121 [advance payment for investigative report not permitted]; 21 Opns St Comp, 1965, at 128 [deposit of funds under contract to be drawn against invalid]; 8 Opns St Comp, 1952, at 139 [cannot prepay salary in advance of vacation]; 5 Opns St Comp, 1949, at 229 [teachers are to be paid on last day of month, not before, unless preceding day is a holiday]) because intervening events such as death or resignation max occur. However, in many instances that result begs the question as the payor may recover for moneys had and received or for unjust enrichment were such events to occur. On the other side of the coin, the State Comptroller has also ruled it proper to pay in advance for services under a contract where consideration existed for such prepayment as, for example, a special rate. (11 Opns St Comp, 1955, at 254 [prepay one year in advance for electricity]; see, id., at 98.) Therefore, to the extent that the State Comptroller has ruled in Opinion No. 82-364 that prepayment of teacher salary under the circumstances herein described constitutes an illegal gift under the Constitution, the court declines to follow such ruling.
PUBLIC POLICY — EDUCATION LAW
The next question to be addressed is whether subdivision (3) of section 3015 of the Education Law is applicable and, if so, whether it represents a strong public policy that is not arbitrable.
Subdivisions (1) and (2) of section 3015 of the Education Law provide, in general, for when a teacher’s salary is payable, that is, monthly or in not less than 10 installments. Subdivision (3) prohibits prepayment of salary.
In Matter of Union Free School Dist. No. 2 v Nyquist (38 NY2d 137 [1975]) the Court of Appeals dealt xvith the question of transfer credits as part of a teacher’s salary computation under a repealed section of the Education Law. Interestingly, the matter went to arbitration and the arbitrator sided with the school district but without prejudice to the teacher’s pursuit of a remedy before the Commissioner of Education. The Commissioner’s resolution was to give effect to transfer credits before repeal of the statute. In affirming this disposition the court stated (38 NY2d, supra, at 143): "[W]e conclude that the provisions of the collective bargaining agreement *840 between the parties, however explicit or clear their content may be, cannot operate to supersede the imperative provisions of the Education Law * * * While in general it is true that any subject with respect to terms and conditions of employment in controversy between a board of education and its teachers may be the subject of collective bargaining under the Taylor Law (Civil Service Law, § 204) and of consequent arbitration under a broad arbitration clause, there are limits to this principle. Thus the scope of such permitted and encouraged bargaining and arbitration is limited by plain and clear prohibitions found in statute or decisional law and may be further restricted by considerations of objectively demonstrable public policy (Matter of Susquehanna Val. Cent. School Dist. at Conklin [Susquehanna Val. Teachers’ Assn.], 37 NY2d 614, and cases cited therein). We hold that the continuing imperative of [the repealed section] imposes such limitation in the present instance.”
However, it is necessary to examine the statute before arriving at a conclusion as to whether public policy forbids arbitration. (Matter of Abramovich v Board of Educ., 46 NY2d 450, 455, supra [tenured teacher may waive benefits conferred by section 3020-a of the Education Law].)
Subdivisions (2) and (3) were added to section 3015 in 1953 (L 1953, ch 361) at about the same time that tenure rights were being statutorily recognized. (1 Ed Dept Rep 736, No. 37.) Subdivision (2) provides that in school districts such as petitioner’s, teacher’s annual salary be paid in not less than 10 installments. Subdivision (1) requires payment at least once a month. Subdivision (3) prohibits advance payments.
The statute in full reads:
”§ 3015. Teacher’s salary when payable
"1. In school districts employing fewer than eight teachers, the salary of any teacher so employed shall be due and payable at least as often as once each calendar month of the term of employment.
"2. In school districts employing eight or more teachers, the salary of a teacher employed for a full school year shall be due and payable within such school year in not less than ten installments. If a teacher is employed in any such district after July first in any school year, the amount of the salary that the school authorities agree at the time of employment to pay such teacher for the balance of that school year shall be due and payable within the school year at least as often as *841 once each calendar month that he is so employed. Nothing contained in this subdivision shall be construed to alter the provisions of sections twenty-five hundred nine, twenty-five hundred seventy-three, three thousand twelve, and three thousand thirteen of this chapter.
"3. Nothing contained in this section shall be construed to authorize payment in advance of rendering service to the school district.”
The amendments to section 3015 were proposed by the State Teachers Association. (1953 Legis Ann 130.) The Department of Education observed (in really taking no position on the bill as it found the proposed legislation consistent with current practice), that it would be difficult to compress 12 months’ payments over 10 installments unless the last payment was for three installments. (Ibid.) "If it were the other way around the payment would be unconstitutional as being payment for service in advance.” (Ibid.) The State Comptroller in Opinion No. 82-364 opined that section 3015 (3) "is designed to provide authority for districts to establish an orderly payroll process.”
Gleaned from this very sparse legislative history is the apparent fact that the purpose behind the 1953 amendment to section 3015 was to provide authority for a payroll mechanism for school districts in accordance with prevailing practice, while prohibiting advance payment of salary.*
The language of the statute in subdivision (3) seems to set *842 forth a positive imperative that advance payments of salary are prohibited. The underlying purpose, it may be surmised, is to avoid the problems that may arise on the death, retirement, resignation or dismissal of a teacher during a period when the teacher has been prepaid. (Matter of Lederman, 72 St Dept Rep 119, supra.)
Are these purposes reflective of a strong public policy? One authority has observed that "public policy has frequently been invoked, with considerable success, to prevent arbitration of certain disputes between public employers and employees”. (Sterk, Enforceability of Agreements to Arbitrate: An Examination of the Public Policy Defense, 2 Cardozo L Rev 481, 538 [1981].) Professor Sterk concluded that public policy was a solid defense in either of two circumstances: (1) where bargaining power was unequal and the item sought to be arbitrated was unfair to the less powerful party, and (2) "public policy should prevent enforcement of arbitration agreements when the dispute involves statutes of other legal rules designed to achieve ends other than doing justice between the parties to a dispute” because "[a]n arbitrator cannot at the same time do justice between the parties and apply a legal rule that directs him not to do so”. (Id., at 543.)
The second factor is clearly implicated herein. The court cannot envision how an arbitrator can resolve this dispute in favor of the respondent, pursuant to the terms of the demand to arbitrate, without offending section 3015 (3) of the Education Law. The public policy is " 'plain and clear’ ”. (Matter of Board of Educ. v Yonkers Fedn. of Teachers, 40 NY2d 268, 273.) The subject statute prohibits "in an absolute sense” that the particular matter posed for arbitration be decided against the petitioner. (Matter of Sprinzen [Nomberg], 46 NY2d 623, 631.) There is no arguable or debatable issue here for an arbitrator to lawfully resolve but one way.
In the court’s opinion, there is no reason advanced why the petitioner should be compelled to proceed to arbitration only to have it later move to vacate or deny confirmation of the award under these circumstances of very strong prohibitory language in a statute. Indeed, article XI of the agreement herein bars the arbitrator from requiring a party to perform *843 an act "prohibited by law”. The better procedure herein is to grant the motion to stay arbitration and have the parties renegotiate pursuant to article XXI of the agreement to reach an accommodation consistent with the original concept and not inconsistent with law.
The court rejects respondent’s make-weight argument that the controversy is arbitrable because it involves procedural safeguards and not matters of substance (cf., Matter of County of Rockland [Primiano Constr.], 51 NY2d 1). The timing or prepayment of salary is not procedural; rather it is, as respondent otherwise has argued herein, a matter of substance.
Accordingly, the motion to stay arbitration is granted.

 The court has reviewed the contents of the Bill Jacket which documents were submitted by the petitioner at the court’s request and shall be deemed an attachment to the papers in support of the petition. It is clear that no one objected to the proposed legislation but, rather, supported its passage to create uniformity in the manner of payment of teacher salaries and to give the school districts and teachers some flexibility in determining how many payments were desirable on an annual basis. (See, correspondence from NY School Bds Assn, NY Teachers Assn, Dept of Audit and Control, and Mount Vernon Teachers Assn, Bill Jacket, L 1953, ch 361.) The Department of Audit and Control, by a Deputy Comptroller reminded the Governor of its prior unpublished opinions concerning the invalidity of advance payments and said (letter of Mar. 24, 1953, at 2): "The bill further provides that it is not to be construed as authorizing payment in advance of rendering services. This is in conformity with section 1 of Article VIH of the Constitution which prohibits gifts of public moneys. The fact that for other purposes of the law (i.e., determining tenure, years of service on salary schedule, retirement eligibility) a teacher who actually works only 10 months is considered to be employed for a full year, does not affect the constitutionality of the practice of paying him in 10 installments as long as he is paid after, not before, the rendering of such service.” Consequently, the Governor was keenly aware of the State Comptroller’s opinion in point on the prohibition against advance payments. It may be surmised that the *842 Legislature was not ignorant of this view as a prior bill to accomplish what the 1953 amendment did had been vetoed in 1952 for reasons not set forth in the correspondence but, presumably, only after consideration of all views including that of the State Comptroller.