OPINION OF THE COURT
Joseph D. Quinn, Jr., J.
In this stage of a public sector labor dispute which arose out of the abolition of the jobs of some 16 part-time cafeteria workers of the South Orangetown School District and the contracting of the district’s food service program to a private firm, petitioner, a local union which is the exclusive bargaining agent for the affected employees, seeks confirmation of an arbitrator’s award of back pay for the 1978-1979 school year to the terminated employees. The school district, a public employer, has made what amounts to a cross application to vacate the award. At issue is whether the disputed award was within public policy limits.
On February 15, 1977, petitioner and respondent entered into a collective bargaining agreement under article 14 of the Civil Service Law, commonly known as the Taylor Law. By its terms, this agreement became effective on September 1, 1977, and it expired on August 31, 1979.
Under this agreement, provision was made for the resolution of grievances in a procedure which culminated in binding arbitration. By contract definition, a grievance "[i]s any alleged violation of this agreement or any dispute with respect to its meaning or application.”
Pertinent here are other contract terms which (1) fix the number of cafeteria employees to be assigned to work at the various district school houses, (2) provide that kitchen workers, other than the co-ordinator, whose pay is set at an hourly rate, shall be compensated, for the school years 1977-1978 and 1978-1979, on a piecework basis in accordance with a scale which is predicated upon the number of units of food sold on an average daily basis, and (3) prescribe that the working year shall consist of the school calendar less half days and days upon which school is out of session due to inclement weather and the like. Additionally, mutual consent of the contracting *1018 parties is a prerequisite to any change in terms and particularly those terms pertaining to the number of workers to be employed.
In September of 1977, the district board of education, with a mind to reviving a past practice involving a hot-lunch program which had been farmed out to a private contractor, appointed a committee, comprised of union members, board members and Parent Teacher Association members, to investigate the feasibility of revising the then current food program. In a report made to the board in January of 1978, a majority of the committee recommended a return to the hot-lunch plan. Union representatives disagreed with this proposal.
On June 14, 1978, the school board gave written notice to all part-time cafeteria workers that their employment would continue for the 1978-1979 school year in accordance with the then obtaining collective agreement. Each employee responded affirmatively to inquiry as to willingness to continue in employment.
In August of 1978, the district board, having decided to do away with the sandwich lunch program, which had been instituted three years before, and to return to the hot-lunch plan, sought bids for the latter service from private contractors. Upon the receipt of bids, the board proceeded first to abolish the cafeteria workers’ labor-class positions and then to award a food service contract to one of the bidders. These actions were taken on August 23, 1978. On the following day, the employees were notified by letter that their jobs had been terminated. It is claimed by the district that the food service contract eliminated a $10,000 subsidy which had been necessary under district operation of the food program, thus effecting a saving for the taxpayers.
On October 12, 1978, the 16 affected employees, represented by counsel to the. union, filed claims against the district seeking to recover anticipated wages for the 1978-1979 school year as well as retirement fund contributions for the same period. Although the record is silent on the subject, it appears that the parties treated the claim notices as formal grievances and that, with or without progression through the preliminary steps of the contract grievance process, the dispute led to the union’s demand for arbitration on December 18, 1978. It seems that the school district acceded to this procedure without serious protest. At any rate both the union and the district participated in arbitration.
*1019 At arbitration, the school district contended that, notwithstanding the union’s lack of concurrence, it was privileged, as a matter of law, to abolish the jobs in question at any time, and that, as a matter of management prerogative, it was free at any time to terminate the district operated food service program and to substitute in its place a contracted program, all without violating the existing labor contract. Rejecting these contentions, the arbitrator found that the district, by entering into a contract which included provisions (1) giving recognition to the union as exclusive bargaining agent for the cafeteria workers, (2) requiring the mutual concurrence of the union and the district in any change in the number of cafeteria positions, and (3) covering wage payments for the 1978-1979 school year, surrendered its right to act unilaterally.
On this basis, he determined that the school district had violated the agreement by abolishing all of the cafeteria workers’ jobs and by contracting out the school lunch program. He sustained the claims, or grievances, and awarded each of the 16 employees wages for the 1978-1979 school year, as corrected by reference to district payroll records for the preceding year. Further the arbitrator awarded each employee retirement fund contributions for the 1978-1979 school year. Even though he refused to credit the district with the amount of unemployment benefits received by the several employees during the period, he did direct that these employees repay such compensation directly to the Department of Labor and that the district receive an experience rating credit from that department. Finally, the arbitrator denied the district a credit for compensation received by the several employees from other employment or occupation during the period covered by the wage award. This denial was based upon the district’s failure to make a showing of such interim earnings.
The award came down on July 12, 1979. On July 20, 1979, the school district applied to the arbitrator for modification of that determination, pressing once again its earlier demand for credit for the cafeteria workers’ outside earnings against the wage award made to them. In addressing this application, the arbitrator acknowledged that the issue of alleged outside earnings had been raised by district counsel during the main hearing, when, in the district’s case, counsel had called upon his adversary to produce a list of such earnings. Noting that this request had been refused by the union’s counsel and that the question had not been pursued again until it was men *1020 tioned in the district’s posthearing brief, he denied relief upon the ground that the district had waived all right thereto by failing to shoulder its burden of proof by either interrogating the grievants or by offering evidence from any independent source.
In seeking vacatur of the award here, the school district contends that the disputed determination goes beyond the bounds of public policy, in that it (1) overrides the power of a public employer to abolish civil service positions in good faith and to contract with the private sector for the rendition of services which it is authorized to provide directly through its own employees, and (2) compels a gift of public funds by depriving it of a deduction for outside earnings received by the affected employees in lieu of compensation from the district.
To be sure, it is true that, in a general sense, an appointing body has the power to determine that civil service positions may be abolished, in good faith, for reasons of efficiency and economy. (Abbott v City of Poughkeepsie, 98 Misc 2d 601, 606, affd 71 AD2d 1010.) It is equally certain that municipal subdivisions of the State are free to contract in good faith with private parties for the provision of services which might otherwise be performed by public employees. (Matter of Westchester County Civ. Serv. Employees Assn. v Cimino, 58 AD2d 869, affd 44 NY2d 985.) As a consequence, a public employer may not surrender those powers in a collective bargaining agreement unless they constitute terms and conditions of employment (Matter of Saratoga Springs City School Dist. [New York State Public Employment Relations Bd.], 68 AD2d 202, 208).
In the case at bar, the school district and the union agreed that the number of positions in the cafeteria staff could neither be increased nor decreased during the life of the contract without the "mutual concurrence” of those parties. Although the matter of size of the cafeteria staff was not subject to mandatory bargaining, nevertheless the school district was always free to make it the subject of voluntary bargaining, and, of course at liberty to agree to submit to arbitration any disputes over the size of the cafeteria staff. (Cf. Matter of Susquehanna Val. Cent. School Dist. at Conklin [Susquehanna Val. Teachers’ Assn.], 37 NY2d 614.)
At the same time that the school district, of its own volition, placed the size of cafeteria staff within the collective bargain *1021 ing agreement here, it made the abolition of cafeteria jobs and the contracting out of food services, terms and conditions of employment, and it relinquished the right to exercise such powers unilaterally. Consequently, it cannot be heard now to argue that the arbitrator’s resolution of a dispute over such terms and conditions should be undone because it disregards what might have otherwise been unfettered governmental prerogatives.
Even though the school district’s first public policy challenge is off the mark, it is undeniable that the second gets to the very core of the award. For, while it is clear that the arbitrator’s determination of contract violation and the resulting general remedy which he has fashioned for that violation may not be set aside, it is equally evident that his wage award, in its present form, is laden with potential for a windfall for the affected employees at the expense of the taxpayers. By denying the district an offset for outside earnings against awarded wages, the arbitrator has virtually guaranteed to the cafeteria workers the right to receive compensation from two sources for the same period of service. For this reason, the terms of award exceed public policy limits.
The school district cites subdivision 3 of section 75 and section 77 of the Civil Service Law, with their identical provisions requiring the deduction of sums earned from outside employment and unemployment insurance benefits from back-pay awards made to reinstated civil servants, to illustrate the shortcomings of the award as it now stands. While those sections are neither applicable nor controlling here, they do serve as analogues to demonstrate the intent of the Legislature to carry out the public policy against gifts of public funds which is enunciated in section 1 of article VIII of the New York Constitution. (Cf. Picconi v Lowery, 36 NY2d 221, 224; 9 Opns St Comp, 1953, pp 69, 71.)
The court is not unmindful that the arbitrator’s denial of the claim in mitigation of damages here is based upon his finding of a deficiency in the school district’s proof. Had that finding been made by a court of law there could be no quarrel with it, for it is a rule of law that, in a common-law action for wrongful discharge of an employee, the burden of going forward with the evidence in reduction of damages is on the defendant. (McClelland v Climax Hosiery Mills, 252 NY 347, 351.)
But in an arbitral forum, absent provision to the contrary *1022 in the arbitration agreement, arbitrators are not bound by principles of substantive law or rules of evidence. Their duty is to reach a just result regardless of the technicalities. (Matter of Raisler Corp. [New York City Housing Auth.], 32 NY2d 274, 282; Lentine v Fundaro, 29 NY2d 382, 385.) "Nor are [arbitrators] restricted to a consideration of only such evidence as the parties see fit to produce, unless, of course, the submission so provides. The obligation imposed upon the arbitrators is to resolve the controversy referred to them honestly and fairly and to the best of their ability and understanding. In order to fulfill that obligation they must of necessity consider both sides of the dispute, and in that manner all defenses to asserted claims are resolved on the merits.” (Matter of Springs Cotton Mills [Buster Boy Suit Co.], 275 App Div 196, 200, affd 300 NY 586.)
At arbitration, union counsel’s circumspect refusal to comply with the district’s request for a list of the employees’ outside earnings should have been a signal to the arbitrator that there was a likelihood that such earnings existed. That being so, the arbitrator misconducted himself by failing to direct counsel or the employees involved to reveal that information. But for such refusal, a case for reduction of damages might have been made out. From this it appears that the award here, if left undisturbed, may well lead to an unwarranted expenditure of public moneys.
There is yet another aspect of the award which poses difficulty insofar as the public purse is concerned. This involves the arbitrator’s treatment of unemployment insurance benefits received by the grieving employees. Rather than permitting the district to offset those benefits against the wage award, the arbitrator ordered the employees to make restitution of the benefits directly to the Labor Department, and he further directed that department to credit the district’s experience rating account upon receipt of restitution payments. Such a disposition may be all well in theory, but, practically speaking, it creates another economic burden for the taxpayers of the school district. If collection problems arise, the district will be doubly charged. Firstly, it will have been deprived of the benefit of the credit. Secondly, it will be back-charged by the Labor Department for the amount of unemployment compensation paid to the employees. Such a result would be patently unjust. Nor may it be allowed to stand.
Accordingly, the petition to confirm the arbitrator’s award *1023 is denied, and the cross application to vacate the award is granted, without costs, to the extent that the award of wages is vacated and the matter is remitted to the arbitrator with a direction to order the South Orangetown Central School District to pay the cafeteria workers the compensation previously fixed by him less any sums earned by them in other employment or occupation and less any unemployment insurance benefits received by them during the 1978-1979 school year. If the parties cannot agree on the offsetting amounts, then the arbitrator shall hold a hearing to determine those amounts. Retirement contributions shall be based upon net pay awarded.