150

In the Matter of the Arbitration between SHEILA TRUDEAU, as President of the SOUTH COLONIE TEACHERS' ASSOCIATION, Respondent, and SOUTH COLONIE CENTRAL SCHOOL DISTRICT, Appellant.

BOARD OF EDUCATION OF THE SOUTH COLONIE CENTRAL SCHOOL DISTRICT et al., Appellants, v THOMAS O'ROURKE, as Former President of the SOUTH COLONIE TEACHERS' ASSOCIATION et al., Respondents.

Third Department, February 4, 1988

APPEARANCES OF COUNSEL

*Tabner & Laudato (Paul J. Laudato* of counsel), for appellants.

*Bernard F. Ashe (Gerard John DeWolf* of counsel), for respondents.

**OPINION OF THE COURT**

LEVINE, J.

The South Colonie Teachers' Association (hereinafter the Association) and the South Colonie Central School District (hereinafter the School District) entered into a collective bargaining agreement covering the period July 1, 1982 to June 30, 1985. Article 5 (B.1) of the agreement provided as follows: "Planning-preparation time shall be provided so that teachers may have time during the required work day to engage in such professional responsibilities as grading and correcting papers, planning lessons and tests, and conferring with pupils, parents and other staff members. This time shall be apart from the time teachers meet their classes or have other scheduled or required duties. Any time that may be needed by a teacher for traveling between buildings will be separate from planning-preparation time but part of the work day of the teacher." While the agreement was still in effect, the School District revived a team-teaching program in two of its middle schools. To implement the program, the School District issued a memorandum directing the teachers participating in the program to attend planning sessions on a regular daily basis during the planning/preparation periods reserved under article 5 (B.1) of the agreement. The Association filed a grievance under the dispute resolution provisions of the contract and ultimately made a demand for arbitration as the final stage of the grievance process. The School District went ahead with its program. The Association then applied to compel arbitration and moved for a preliminary injunction.

Those proceedings were resolved by a stipulation of discontinuance dated December 20, 1984, under which the parties agreed to go to arbitration and the School District agreed not

to mandate attendance at team-teaching meetings scheduled during the teachers' planning/preparation periods. After several hearings extending into the spring of 1985, the arbitrator rendered a decision finding that the preassignments of teachers by the School District to attend meetings on the team-teaching program during their planning/preparation periods violated article 5 (B.1) of the collective bargaining agreement. The arbitrator ordered the School District to cease and desist from such preassignments and awarded the affected teachers compensation at their respective rates of pay for each hour in which they were so engaged. After the issuance of the arbitrator's award, a dispute arose concerning the relevant time frame for the monetary relief awarded. The School District maintained that the award should not extend beyond the stipulation date of December 20, 1984, while the Association asserted that the award should run through June 1985, since the School District allegedly continued the preassignments through that date. The arbitrator declined to modify the award. The School District's first appeal is from Supreme Court's confirmation of the award following a request by the School District for clarification of the award.

Subsequently, the School District brought a declaratory judgment action seeking an adjudication that, by virtue of the December 20, 1984 stipulation, the teachers were restricted from seeking additional compensation for attending preassigned team-teaching planning meetings subsequent to the date of the stipulation. Supreme Court granted the Association's motion to dismiss this action, giving rise to the School District's additional appeal herein.

■ There should be an affirmance. As to the challenge to the arbitration award itself, article 5 (B.1) of the collective bargaining agreement clearly provided for, in effect, a "free period" during each school day for teachers to use as planning/preparation time for performing such duties as grading papers and preparing lessons and tests, and for which they were not required to account. Specifically, the clause directed that "[t]his time shall be apart from the time teachers meet their classes *or have other scheduled or required duties*" (emphasis supplied). The arbitrator found that the teachers involved in the seventh and eighth grade team-teaching program at two middle schools were given express preassignments to attend daily planning meetings on that program during the time reserved under article 5 (B.1) and ruled that this violated the contract. The parties' written submission to

arbitration asked for a determination of that very issue and, if a violation of the contract was so found, "what shall be the remedy?" The arbitrator fashioned a remedy under which the School District was directed to discontinue such preassignments and the affected teachers were to receive compensation for the time spent in attending the preassigned meetings during their planning/preparation periods, at their respective daily rates of pay. Based upon the foregoing, we are unpersuaded by the School District's contentions that the award was invalid as violative of public policy or punitive.

"[P]ublic policy may not be invoked in every instance where arbitration of a collective bargaining agreement threatens to encroach upon the management prerogatives of a school board" *(Matter of Wyandanch Union Free School Dist. v Wyandanch Teachers Assn.,* 48 NY2d 669, 670). The Association neither sought from the arbitrator nor received relief in the award in the form of a prohibition of implementation of the team-teaching program or of a bar to the holding of planning sessions in preparation therefor; it only requested and obtained relief insofar as those activities were scheduled within the planning/preparation periods granted the teachers under the contract. This left a wide, undisturbed scope for the exercise of management prerogatives and, hence, there clearly was no conflict between the award and public policy in any absolute sense *(see, Matter of Enlarged City School Dist. [Troy Teachers Assn.],* 69 NY2d 905, 906). Nor is there even a hint in the language of the arbitrator's decision that the award of compensation was "genuinely intended to be punitive" *(Board of Educ. v Niagara-Wheatfield Teachers Assn.,* 46 NY2d 553, 558).

◼ We likewise reject the School District's contention that, because the affected teachers had already received their full remuneration for regular school hours of teacher attendance, any additional award of compensation for attending meetings during planning/preparation periods in regular school hours represents an unconstitutional gift of public funds. First, as the lead case of *Matter of Antonopoulou v Beame* (32 NY2d 126) establishes, when public employees and their governmental employer enter into a collective bargaining agreement providing for submission of contractual disputes to an arbitrator and giving the arbitrator discretion to fashion an appropriate remedy for a contract breach, the award resulting from the arbitration process is a legally binding contractual obligation of the public employer and, as such, cannot be considered

an invalid gift. "In the instant case, the collective bargaining agreement, contemplating as it does a continuing process of grievance resolution through the prescribed grievance procedures, created an enforceable contractual right in the subsequent settlement. Absent a showing, not here present, that the grievance did not relate to the terms or conditions of employment, the settlement is as binding as any other arbitration award * * * Consequently, there was a legal obligation on the part of the municipality to comply with the settlement decision, and a payment thereunder cannot be considered a 'gift' " (supra, at 133). Such was the case here. Undeniably, the dispute as to whether the School District could invade the teachers' open planning/preparation periods by preassignments to scheduled meetings related to terms and conditions of employment, and the resolution of the dispute and determination of an appropriate remedy was consistent with the grievance procedure set up under the contract. Consequently, the award represented the identical binding contractual legal obligation upheld in *Antonopoulou* and was not a gift.

Moreover, the fact that the teachers who were the recipients of the monetary award had received their regular compensation for the time spent in attending the meetings is not a basis for a different result. In agreeing to article 5 (B.1), the School District conceded that teachers needed an otherwise unassigned period of the school day to accomplish the professional tasks described therein. It seems obvious, then, that infringement of that period by preassignment to scheduled meetings would result in the teachers either having to perform the tasks contemplated under article 5 (B.1) at times for which they were not being paid, or to work more intensely to complete those tasks during regular school hours. In either case, the remedy of additional compensation, tailored precisely to the time taken from each teacher's planning/preparation period by the preassignments, was entirely appropriate and valid (see, *Matter of North Colonie Cent. School Dist. [North Colonie Teachers' Assn.]*, 60 AD2d 496, 498, *affd* 46 NY2d 965; see also, *Merrins v Honeoye Teachers Assn.*, 107 AD2d 184, 185-186).

■ We are equally unpersuaded by the School District's remaining objections to the award, namely, (1) that the December 20, 1984 stipulation of settlement of the Association's earlier application to compel arbitration barred an arbitration award for damages based upon teachers' attendance at team-teaching planning meetings after the date of the stipulation,

and (2) that the arbitrator so imperfectly executed his authority that a final and definite award was not made *(see,* CPLR 7511 [b] [1] [iii]). Regarding the first of these objections, it is true that in the December 20, 1984 stipulation, the School District agreed thereafter not to *compel* the affected teachers to attend sessions on the team-teaching program, but to conduct such sessions strictly on a voluntary basis. However, the partial transcript of the arbitration hearings which is included in the record reflects that the arbitrator had before him evidence that the School District continued thereafter in its practice of nonvoluntary preassignments of teachers during planning/preparation periods. There is also an indication that the arbitrator was informally made aware of the stipulation during the proceedings. In any event, the stipulation was expressly made without prejudice to the parties' respective rights in the arbitration proceeding. Thus, the arbitrator was not restricted by the terms of the stipulation as to an award of compensation for the School District's continued breach of article 5 (B.1) thereafter.

Nor should the award be vacated because it lacks definiteness. The award speaks as of the date that it was rendered, August 28, 1985. It provides for compensation of "each teacher who wrongly under the contract was required to perform scheduled and required duties during planning/preparation time at his or her daily rate of pay for each hour so worked". The School District consistently took the position that the collective bargaining agreement did not bar the actions which were the subject of the grievance. As already noted, there was evidence from which the arbitrator could have concluded that the School District continued to mandate attendance at team-teaching planning sessions and preparation of agenda and written records of each meeting. The arbitrator so found. The arbitrator's order that the School District "cease and desist" from the practice of making preassignments is further supportive of the fact that he found an ongoing violation of the contract. The specifics of the identities of the affected teachers, their respective rates of pay and attendance at preassigned sessions were apparently readily ascertainable from School District records, since the parties were able to arrive at an agreement on these particulars when they met to implement the award. Consequently, the remedy to which each such

teacher was entitled under the award was calculable and the award was thus sufficiently definite to withstand the School District's challenge *(accord, Matter of Hunter [Proser],* 274 App Div 311, *affd* 298 NY 828).

 Finally, we agree with Supreme Court's dismissal of the School District's action for a declaration that the Association was restricted by the terms of the December 20, 1984 stipulation from seeking compensatory damages on behalf of the grieving teachers arising out of events subsequent to the date of the stipulation. The complaint alleges that the parties stipulated that subsequent team-teaching planning sessions would be conducted on a voluntary basis and that, therefore, the affected teachers could not be awarded compensation for their willing attendance at subsequent planning sessions. However, the stipulation and related correspondence upon which the School District relies neither expressly restrict the extent of damages which might be awarded nor limit the period of contract violation which might be determined in the arbitration proceeding. The formal submission to arbitration is open-ended and was never modified.

Therefore, the only conceivable basis for giving effect to the stipulation as a limit on the School District's liability is that voluntary attendance of teachers at meetings under the preassignments after December 20, 1984 could not be deemed to constitute a violation of article 5 (B.1) of the contract. But the issue of the School District's breach "[o]n or about September 7, 1984, and *thereafter"* (emphasis supplied) was covered in the submission to arbitration. To the extent that the December 20, 1984 stipulation affected that issue, it should have been presented to the arbitrator and, in fact, it was cited to the arbitrator in the School District's application to him to modify the award. The declaratory judgment action thus clearly had as its only purpose and effect the undermining of the arbitrator's award. The doctrine of res judicata applies to arbitration awards and may serve to preclude subsequent relitigation of issues or claims *(Matter of Ranni [Ross],* 58 NY2d 715, 717). "A judgment in one action is conclusive in a later one not only as to any matters actually litigated therein, but also as to any that might have been so litigated, when the two causes of action have such a measure of identity that a different judgment in the second would destroy or impair rights or interests established by the first" *(Schuylkill Fuel Corp. v Nieberg*

*Realty Corp.,* 250 NY 304, 306-307). Therefore, Supreme Court correctly applied res judicata in dismissing the complaint. Accordingly, the judgment and order should be affirmed.

Weiss, J. (dissenting). We fully concur with the majority determination insofar as it upholds the award as neither violative of public policy nor punitive. Nonetheless, under the factual circumstances presented, we agree with the School District's contention that the monetary relief granted was gratuitous and thus constitutionally prohibited *(see,* NY Const, art VIII, § 1). An arbitrator unquestionably has very broad authority and may, where appropriate, award monetary damages even without a specific contractual authorization *(see, Merrins v Honeoye Teachers Assn.,* 107 AD2d 184, 185-186; *Matter of North Colonie Cent. School Dist. [North Colonie Teachers' Assn.],* 60 AD2d 496, 498, *affd* 46 NY2d 965). Nonetheless, public funds may not be paid to an individual unless premised on a legal obligation *(see, Matter of Antonopoulou v Beame,* 32 NY2d 126, 131).

Here, the arbitrator could readily conclude that the collective bargaining agreement had been breached. And yet, as a practical consequence, the affected teachers were not required to perform extra duties, but simply to perform their team-teaching responsibilities during a time of day not available for preassignment by the School District *(cf., Merrins v Honeoye Teachers Assn., supra).* These teachers remained continually employed and were fully paid for the time worked *(cf., Matter of North Colonie Cent. School Dist. [North Colonie Teachers' Assn.], supra).* Moreover, as the majority recognizes, the School District's broad management prerogatives were not challenged here. The Association acknowledged the School District's authority to preassign team-teaching meetings at any time of the day not precluded by the collective bargaining agreement. Under these circumstances, the arbitrator's directive to discontinue the challenged preassignments afforded the Association a complete remedy. The further monetary award was unwarranted and, in effect, serves as an unconstitutional gift of public funds *(see, Matter of South Orangetown Kitchen Workers Assn. [South Orangetown Cent. School Dist.],* 101 Misc 2d 1016, 1021-1023). As such, Supreme Court should have vacated the monetary relief as having been awarded in excess of the arbitrator's authority *(see,* CPLR 7511 [b] [1] [iii]).

Having so concluded, the School District's appeal in the separate declaratory judgment action should have been rendered academic.

KANE and MIKOLL, JJ., concur with LEVINE, J.; MAHONEY, P. J., and WEISS, J., dissent in an opinion by WEISS, J.

Judgment and order affirmed, with costs.