■ EDWIN N. WEIDMAN et al., Appellants-Respondents, v ABRAHAM FUCHSBERG, Respondent-Appellant.—Order and judgment (one paper) of the Supreme Court, New York County (David B. Saxe, J.), entered on March 14, 1991, which modified the subject arbitration award by striking Award I (c) beginning with the words "Plus bad faith termination", striking the factual finding that respondent acted in bad faith, vacating an award of "bad faith damages", awarding petitioner Edwin N. Weidman a total sum of damages in the amount of $315,513.07, awarding petitioner Donald Miller the total sum of $290,400.74, directing that respondent pay the sum of $3,299.39 to the American Arbitration Association and ordering respondent to pay the compensation of M. R. Weiser & Co., is unanimously modified on the law to the extent of reinstating in full the findings and award of the arbitrator, and otherwise affirmed, without costs or disbursements.

Petitioners appeal and respondent cross-appeals from a judgment which partly confirmed an arbitrator's award and partly vacated that award. At issue before the arbitrator was whether petitioners were properly terminated by respondent from the law firm of Fuchsberg and Fuchsberg of which they were both former partners. Petitioner Edwin N. Weidman had entered the firm as a partner in 1968 and petitioner Donald Miller joined Fuchsberg and Fuchsberg in 1969 and became a partner in 1972. The firm's partners, including petitioners and respondent, signed a number of agreements dated December 18, 1975, two of which, the Partnership Agreement and the Supplementary Agreement were in dispute at the arbitration proceeding. The Partnership Agreement dealt with general matters of firm administration, distribution of profits and the liability of the partnership to a terminated or retiring partner. The Supplementary Agreement provided that after ten years of service with the firm, petitioners and another individual, Seymour Fuchsberg, would be entitled to purchase 20 percent of respondent's interest in the firm and that they could buy additional 20 percent interests of his remaining

share in the following two years. According to the Supplementary Agreement, in the event of a conflict with the main agreement, the terms of the Supplementary Agreement would be controlling.

Prior to July 1, 1985, petitioners notified respondent that they intended to exercise their rights to purchase part of respondent's interest in the firm. Petitioners assert that respondent then embarked upon a course of conduct directed at avoiding his obligations. At any rate, a dispute arose between the parties concerning the value of respondent's interest, and in April of 1987 petitioners were terminated as partners of the firm with respondent casting a crucial vote. Since the partnership agreements established arbitration as the means to resolve conflicts between them, an arbitration proceeding ensued. In a partial award in January of 1988, covering the liability phase of the matter, the arbitrator found that petitioners were terminated in bad faith to prevent them from obtaining the benefits of purchasing some of respondent's interests, resulting in an "undue penalty or unjust forfeiture." Then, following examination of extensive additional financial information, including expert testimony, the arbitrator issued a Final Award on April 2, 1990 determining the balance of the 1987 income due to each petitioner to be $39,698.39, that they should receive termination pay of $529,296.01 each plus bad faith termination and interest thereon of $900,502.42 per person, as well as monthly payments of $15,002 for four months. Finally, the arbitrator authorized respondent to offset the amounts due to petitioners from sums awarded to him in his counterclaim based upon petitioners' buy-in of $345,888 by Weidman and $354,270 by Miller.

Thereafter, petitioners moved to confirm the arbitration award and respondent to set it aside. The Supreme Court upheld all parts of the award except the damages given for respondent's breach of the Supplementary Agreement. In the view of the court, the amount granted for bad faith termination reflected an improper award of punitive damages which was in violation of public policy in New York State. The parties have appealed and cross-appealed. Petitioners challenge the Supreme Court's ruling that the award of damages for breach of the Supplementary Agreement constituted an award of punitive damages, whereas respondent urges that the court should have vacated most, if not all, of the remainder of the award as irrational and an impermissible re-writing of the Partnership Agreement. It should be noted that respondent's claim of punitive damages is made despite his having

participated fully in the arguments before the arbitrator relating to lost profits and bad faith termination, with both sides calling their own expert witnesses to testify on these issues. Yet, since the arbitrator found that petitioners were entitled to more damages than considered warranted by respondent, he has now declared the award to constitute punitive damages.

The operative principle for reviewing an arbitration award was described in *Matter of Silverman (Benmor Coats)* (61 NY2d 299, 308), wherein the Court of Appeals stated that: "Moreover, absent provision in the arbitration clause itself, an arbitrator is not bound by principles of substantive law or by rules of evidence *(Lentine v Fundaro,* 29 NY2d 382). He may do justice as he sees it, applying his own sense of law and equity to the facts as he finds them to be and making an award reflecting the spirit rather than the letter of the agreement, even though the award exceeds the remedy requested by the parties * * * His award will not be vacated even though the court concludes that his interpretation of the agreement misconstrues or disregards its plain meaning or misapplies substantive rules of law, unless it is violative of a strong public policy, or is totally irrational, or exceeds a specifically enumerated limitation on his power".

Similarly, this court has recently reasserted the narrow standard to be applied in reviewing arbitration awards. As we held in *Matter of Correction Officers Benevolent Assn. v City of New York* (160 AD2d 548, 549), "[w]hen a contract is interpreted by an arbitrator, his determination may be disturbed only if it is found to be completely irrational, violative of public policy, or beyond the scope of arbitration" *(see also, Matter of Albany County Sheriff's Local 775 [County of Albany],* 63 NY2d 654). The Supreme Court, however, rejected the arbitrator's assessment that he was awarding damages for the bad faith termination of petitioners and, instead, characterized his decision as the imposition of punitive damages, holding that the amount specified was beyond that allowed in the Partnership and Supplemental Agreements. The court came to this conclusion notwithstanding that compensation for lost profits was allowable under the Supplemental Agreement. As the Court of Appeals has stated, "[l]oss of future profits as damages for breach of contract have been permitted in New York under long-established and precise rules of law" *(Kenford Co. v County of Erie,* 67 NY2d 257, 261).

In *Garrity v Lyle Stuart, Inc.* (40 NY2d 354), a decision with which some State courts disagree, a sharply divided Court of

Appeals prohibited punitive damages in arbitration awards. Subsequently, in *Board of Educ. v Niagara-Wheatfield Teachers Assn.* (46 NY2d 553, 558), a unanimous Court of Appeals revisited the question of punitive damages in arbitration and stated that *Garrity v Lyle Stuart, Inc. (supra)* "should not be interpreted as an indication that whenever compensatory damages are somewhat speculative they are necessarily punitive * * * Ritualistic incantations of 'punitive damages' will not suffice to vacate an arbitration award where discretion is used in the computation of damages. Only where the damages are genuinely intended to be punitive should the courts vacate the award". In *Matter of Trudeau (South Colonie Cent. School Dist.)* (135 AD2d 150, 154, *affd* 73 NY2d 736) an award of additional compensation was upheld despite the contention by the School District that it was punitive since there was no hint in the arbitrator's decision that the compensation awarded by the arbitrator was genuinely intended to be punitive. For a detailed discussion of the availability of punitive damages in arbitration proceedings, see the learned article by Constantine N. Katsoris in 18 Fordham Urban Law Journal 573, *Punitive Damages in Securities Arbitration: The Tower of Babel Revisited.*

The arbitration award herein also did not authorize punitive damages but damages for bad faith termination, and the Supreme Court was simply unjustified in declaring the two to be indistinguishable. Indeed, petitioners never sought punitive damages but enforcement of the Partnership and Supplementary Agreements. Since there is nothing in the arbitration award which is violative of public policy, totally irrational, or was in any way a product of specifically enumerated limitations upon the arbitrator's power, the award should have been confirmed in all respects. In that connection, we have considered respondent's claims of irrationality and find them to be entirely without merit. Neither the award nor any of its constituent parts was clearly "so divorced from rationality that it can be accounted for only by * * * misbehavior" of the arbitrator *(Matter of S & W Fine Foods [Office Employees Intl. Union],* 8 AD2d 130, 132, *affd* 7 NY2d 1018). Concur—Sullivan, J. P., Milonas, Wallach and Smith, JJ.