OPINION OF THE COURT
Edward H. Lehner, J.
*293 Before the court are the motions of the petitioners in the two above-entitled proceedings to vacate and set aside the arbitration award dated March 14, 1995, and the application by respondent to confirm the award and attach assets of petitioners.
In June 1992, after respondent acquired 20% of the shares of respondent Lubin & Schlesinger, Inc. (L&S) for $100,000, he entered into an agreement with the other shareholders (the Agreement) which contained, among other provisions, restrictions on the transfer of shares so that should any shareholder desire to sell his or her shares, the person would be required to offer them first to the corporation at the value thereof as determined by the then accountants of the corporation "computed in accordance with generally accepted accounting principles”, which valuation "shall be final and binding upon all parties”. The purchase price would be payable by the corporation over a specified period of time. The Agreement further provided that: "Any dispute arising hereunder shall * * * be submitted to the Board of Arbitration of the American Stock Exchange and the decision of such Board shall be final and binding upon the parties.”
By letter dated August 30, 1993, directed to petitioner Lubin (the controlling shareholder) "c/o LTL International Trading Corp.” (LTL), respondent stated that he was "withdrawing from the corporation due to personal reasons”. During his 14-month period of stock ownership of L&S, respondent received distributions of interest and income of approximately $40,000.
The accountants for L&S thereafter determined that the value of respondent’s shares as of September 20, 1993 was $85,358. Respondent objected to that valuation and, by statement of claim dated December 10, 1993, instituted an arbitration proceeding. Although the statement does not specify the amount of respondent’s claim, there is no dispute in the papers that the amount in controversy was then $15,000. Both L&S and LTL were named as parties, although in the statement of claim respondent asserts that the name of L&S was changed to LTL. While a certificate to effect such change was executed, it appears that it was never filed and that there is no existing corporation known as LTL.
In January 1994, the assets of L&S were transferred to a new corporation, Mitoric Trading, Inc. (Mitoric), whose shareholders included six persons who did not own shares of L&S and who purportedly invested $450,000 in Mitoric. However, L&S retained approximately $55,000 to pay the *294 amount still owing pursuant to the valuation of its accountants under the pay-out provisions of the Agreement ($38,411.10), plus the $15,000 in dispute.
By amended statement of claim dated August 22, 1994, respondent amended his claim to include Lubin and Mitoric as parties, and added claims (i) for profits of L&S and Mitoric subsequent to his withdrawal; (ii) against Lubin and L&S for breach of fiduciary duties; and (iii) against Mitoric for obtaining the assets of L&S without providing adequate consideration.
Although the amendment, including the addition of two new parties, was objected to by all petitioners, the panel permitted it and the arbitration commenced shortly thereafter on October 3, 1994.
After a lengthy hearing, the panel issued an award against L&S, LTL, Lubin and Mitoric "jointly and severally” in the sum of $244,594, which was stated to be in addition to payments on the stock redemption already received by respondent (approximately $47,000). No explanation of the amount awarded, nor any apportionment of liability, nor any indication of which claims were sustained, was set forth in the award.
In maintaining that the award is irrational, petitioners point out that if sustained it will result in respondent receiving $350,000 on his $100,000 investment during a period of 14 months (a sum allegedly equal to 54% of the value of L&S at the time of redemption).
The principles to be applied in reviewing an arbitration award are set forth in Matter of Silverman (Benmor Coats) (61 NY2d 299, 308 [1984]): "Moreover, absent provision in the arbitration clause itself, an arbitrator is not bound by principles of substantive law or by rules of evidence * * * He may do justice as he sees it, applying his own sense of law and equity to the facts as he finds them to be and making an award reflecting the spirit rather than the letter of the agreement, even though the award exceeds the remedy requested by the parties * * * His award will not be vacated even though the court concludes that his interpretation of the agreement misconstrues or disregards its plain meaning or misapplies substantive rules of law, unless it is violative of a strong public policy, or is totally irrational, or exceeds a specifically enumerated limitation on his power”. (See also, Hackett v Milbank, Tweed, Hadley & McCloy, 86 NY2d 146, 154-155 [1995]; Weidman v Fuchsberg, 177 AD2d 342 [1st Dept 1991].)
While petitioners assert numerous evidentiary errors purportedly committed by the arbitrators during the course of *295 the hearing, under the foregoing principles ^¡¡y,ch asserted errors are not subject to judicial review.
Nor does the mere fact that the arbitrators gave no explanation of their award state a ground for vacatur. "Where an award does not indicate how the amount awarded has been computed or that the arbitrator has included an element of damages specifically excluded by the contract, it cannot be concluded that the arbitrator exceeded his powers under the contract.” (Matter of Zeller & Goldschmidt v Cooper, Selvin & Strassberg, 167 AD2d 548 [2d Dept 1990].) Arbitrators are not required "to make detailed factual findings or specify the formula relied upon to reach their conclusions” (Matter of RRN Assocs. [Dak Elec. Contr. Corp.], 224 AD2d 250; see also, Imptex Intl. Corp. v Worldwide Fabrics, 194 AD2d 388 [2d Dept 1993]). Thus, while lack of a requirement that arbitrators give an explanation of their award may be a serious drawback to the arbitration process, that arbitrators decline to explain their decision does not, in itself, justify upsetting the award.
However, the court finds that the award must be set aside because (i) the arbitrators improperly added Mitoric as a party; (ii) exceeded their power by apparently imposing successor liability based on a claim of fraudulent conveyance, and (iii) made an indefinite award leaving parties unable to determine their respective rights and obligations.
The dispute is subject to the Federal Arbitration Act (FAA) (9 USC § 2), being that the parties were engaged in interstate commerce as L&S traded options both on the American Stock Exchange and the Chicago Board of Options Exchange. Disputes among parties involved in the securities industry have been repeatedly held to be governed by the FAA (Matter of Salvano v Merrill Lynch, Pierce, Fenner & Smith, 85 NY2d 173, 180 [1995]; Singer v Jeffries & Co., 78 NY2d 76, 81 [1991]).
Here, when the respondent applied to amend its claim to add two new parties, Mitoric objected to being included. Although the basis of its objection is not clearly specified in the submitted papers, its objection should have been upheld as there is no claim that it is a party to any agreement with respondent.
Under New York law, participation in arbitration normally results in a waiver of any objection to the arbitrators’ jurisdiction (Matter of Smullyan [SIBJET S. A.], 201 AD2d 335 [1st Dept 1994]). However, the recent decision of the Supreme Court in First Options of Chicago v Kaplan (514 US —, 115 S Ct 1920 *296 [1995]) necessitates a contrary decision when the FA A is involved. The dispute there was between a firm that cleared stock trades on the Philadelphia Stock Exchange on one side, and a corporation with whom it had an agreement calling for arbitration as well as the sole shareholder of the corporation and his wife on the other. In a unanimous decision, the court held that, notwithstanding the fact that the individuals participated in the arbitration, under the FAA their objection to having the arbitrator determine the dispute should not have been resolved by the arbitrator as the subject agreement did not call for him to determine arbitrability. Rather, even though the individuals could have sought a stay of arbitration or refused to participate therein, the court concluded that the "arbitrability” of the dispute is subject to independent de nova review by the courts.
Here there is no claim that Mitoric is party to any agreement with respondent. Thus, under the rule of the foregoing case, it is concluded that the award against Mitoric must be vacated as it was entitled to object to the claim against it being resolved by arbitration. The contention that Mitoric is a mere alter ego of L&S and/or LTL is belied by the facts as there are several shareholders of Mitoric, who invested significant sums therein, who were never shareholders of L&S (cf., Matter of Smullyan [SIBJET S. A.], supra).
Next, the award is also subject to vacatur because the arbitrators clearly exceeded their authority (see, CPLR 7511 [b] [1] [iii]; Johnson v Johnson, 161 AD2d 125, 128 [1st Dept 1990]). "[A] party can be forced to arbitrate only those issues it specifically has agreed [to arbitrate]” (First Options of Chicago v Kaplan, supra, 514 US, at —, 115 S Ct, at 1925). Here, although the basis for the award was not set forth, the determination apparently is based on some form of successor liability and breach of fiduciary duty, involving questions of corporate governance. Such issues are not covered by the Agreement, and the arbitration provision thereof would not be applicable to such claims (see, Rinaolo v Berke, 188 AD2d 297 [1st Dept 1992]; Matter of Silver v Pilzer, 59 AD2d 680 [1st Dept 1977] [where a similar arbitration clause in the latter case was held inapplicable to a dispute over corporate management]). The only issue raised by respondent covered by the arbitration provision of the Agreement is that relating to the value of his shares as of the time of withdrawal. Here, the arbitrators considered issues beyond the powers ceded to them under the Agreement, as well as events that occurred subsequent to the date as of which the valuation was to be made.
*297 Lastly, the award must be set aside as it does not constitute "a final and definite award upon the subject matter submitted”, as is required by CPLR 7511 (b) (1) (iii). An award "relegating the parties to new controversies or future litigations in order to ascertain their rights” is not a "final and definite award” (Johnson v Johnson, supra, at 127). An award that "creates a new controversy” is deficient under said section (Matter of Meisels v Uhr, 79 NY2d 526, 536 [1992]).
Here the joint and several award against four parties, including one (LTL) which apparently does not exist, creates new controversies. For example, should Mitoric pay the full amount of the award, what claim would it have against the other parties? The award against it can only be rationalized based on some form of successor liability. If it improperly acquired assets of L&S, could it then have some claim against the parties causing the transfer? There was a claim against Lubin for some improper expenditures of corporate funds for personal matters. There is no way of knowing whether this claim was sustained. If it was sustained, there would be no claim for contribution with respect thereto. With regard to the award against LTL, a question is raised as to whether it can be considered a de facto corporation, with possible personal liability against the individuals (including respondent) who signed (but apparently did not file) a certificate employing that name. These and other unanswered questions with respect to the liability sought to be jointly and severally imposed demonstrate that the award cannot be deemed final and definite and thus, for this reason alone, cannot be confirmed.
Accordingly, respondent’s motion to confirm the award is denied, and petitioners’ motions in the two proceedings to dis-affirm are both granted and the award is vacated, as is the temporary restraining order heretofore issued herein.